96 P.3d 957 (2004)
152 Wash.2d 299
Kimball D. CHRISTENSEN, a single man, Respondent,
v.
GRANT COUNTY HOSPITAL DISTRICT NO. 1 d/b/a Samaritan Hospital, a nonprofit municipal corporation, Petitioner.
No. 73772-0.
Supreme Court of Washington, En Banc.
Argued February 12, 2004.
Decided August 26, 2004.
As Amended August 31, 2004.
*959 Susan Wilder Troppman, Etter McMahon Lamberson & Clary PC, Spokane, for Petitioner.
Michael A. Arch, Foreman Arch Dodge, Volyn & Zimmerman, Wenatchee, Shelley Movae Buckholtz, Mikkelborg, Broz, Wells & Fryer, Seattle, for Respondent.
Michael Barr King, Lane Powell Spears Lubersky LLP, Stewart Andrew Estes, Keating Bucklin & McCormack, Ralph Crockett Pond, Lane Powell Spears Lubersky LLP, Seattle, for Amicus Curiae Washington Defense Trial Lawyers.
Kathleen Phair Barnard and Jeffrey L. Needle, Seattle, for Amicus Curiae Washington Employment Lawyers Association.
MADSEN, J.
Petitioner Grant County Hospital District No. 1, doing business as Samaritan Hospital (Samaritan), challenges a Court of Appeals decision reversing a grant of summary judgment in Samaritan's favor. The court held that if a public employee claiming retaliatory discharge for union activities fails to obtain relief in administrative proceedings on an unfair labor practices claim, collateral estoppel will not preclude relitigation of the reason for discharge in a later court action for wrongful discharge in violation of public policy. The court remanded to allow respondent Kimball D. Christensen's tort claim to go forward. We reverse.

FACTS
Samaritan hired Christensen as a paramedic in January 1996. Christensen became actively involved in efforts to unionize Samaritan's emergency medical service employees. In June 1997, the Public Employment Relations Commission (PERC) certified the International Association of Emergency Medical Technicians and Paramedics (the union) as the exclusive bargaining representative of Samaritan's paramedic employees. At several points coinciding with the labor negotiations, Christensen received unfavorable supervisor evaluations and discipline.
On October 14, 1997, the union filed an unfair labor practices complaint with PERC, alleging that Samaritan discriminated against Christensen and two other employees for their union activities in violation of the Public Employees' Collective Bargaining Act, chapter 41.56 RCW. Before that complaint was resolved, Samaritan terminated Christensen's employment. On January 28, 1998, the union amended its complaint to allege that Samaritan discharged Christensen because of his participation in protected union activities. On Christensen's behalf the union sought his reinstatement, compensatory damages, including back pay, benefits and interest, and costs and attorney fees.
On March 18 and 19, 1998, PERC held a hearing. Christensen was represented by the union's lawyer. During the proceedings counsel made an opening statement, called eight witnesses to testify about the claim involving Christensen and submitted the declarations of two others, cross-examined Samaritan's witnesses (including the hospital administrator, personnel director, and ambulance director), offered exhibits, and made evidentiary objections. A little over eight pages of the union's posthearing brief evaluated the evidence relating to Christensen's discharge.
On April 30, 1998, the hearing examiner issued his findings of fact, conclusions of law, and order dismissing the union's complaint. The hearing examiner concluded that the union failed to sustain its burden to establish a prima facie case that Samaritan's action in discharging Christensen was substantially motivated by his exercise of rights protected *960 by chapter 41.56 RCW and also found that Samaritan articulated lawful reasons for the discharge, i.e., sexual harassment, "so that no violation of RCW 41.56.140(1)[[1]] is established in regard to Christensen." Conclusion of law 2, Clerk's Papers (CP) at 112.
On May 19, 1999, the union filed an appeal with PERC, and on December 14, 1999, PERC affirmed the examiner's findings, conclusions, and order and adopted them as the PERC decision. Neither party appealed the decision to superior court.
In November 2000, Christensen filed suit in Grant County Superior Court, alleging that Samaritan discharged him in retaliation for his union activities in violation of public policy stated in RCW 49.32.020.[2] On October 25, 2001, Samaritan moved for summary judgment, arguing that collateral estoppel barred relitigation of the issue whether Christensen was discharged in retaliation for his union activity. On April 1, 2001, the court granted the motion.
Christensen appealed and the Court of Appeals reversed, concluding that Smith v. Bates Technical College, 139 Wash.2d 793, 991 P.2d 1135 (2000) "permits a public employee whose union fails to achieve a remedy from PERC to file a separate superior court tort claim for wrongful termination in violation of public policy." Christensen v. Grant County Hosp. Dist. No. 1, 114 Wash.App. 579, 581-82, 60 P.3d 99 (2002), review granted, 150 Wash.2d 1002, 77 P.3d 650 (2003).

ANALYSIS
Summary judgment is appropriate where there are no disputed material facts, and the moving party is entitled to judgment as a matter of law. CR 56(c); McGowan v. State, 148 Wash.2d 278, 289, 60 P.3d 67 (2002). The appellate court engages in the same inquiry as the trial court, with questions of law reviewed de novo and the facts and all reasonable inferences from the facts viewed in the light most favorable to the nonmoving party. Williamson, Inc. v. Calibre Homes, Inc., 147 Wash.2d 394, 398, 54 P.3d 1186 (2002). Whether collateral estoppel applies to bar relitigation of an issue is reviewed de novo. State v. Vasquez, 109 Wash.App. 310, 314, 34 P.3d 1255 (2001), aff'd, 148 Wash.2d 303, 59 P.3d 648 (2002); State v. Bryant, 100 Wash.App. 232, 236-37, 237 n. 9, 996 P.2d 646 (2000), rev' on other grounds, 146 Wash.2d 90, 42 P.3d 1278 (2002); see Purdy v. Zeldes, 337 F.3d 253, 258 (2d Cir.2003) (district court's grant of summary judgment on the basis of collateral estoppel is reviewed de novo); Fireman's Fund Ins. Co. v. Stites, 258 F.3d 1016, 1020 (9th Cir.2001) (under summary judgment standard of review availability of collateral estoppel is an issue of law reviewed de novo).
Collateral estoppel, or issue preclusion, bars relitigation of an issue in a subsequent proceeding involving the same parties. 14A Karl B. Tegland, WASHINGTON PRACTICE, *961 Civil Procedure § 35.32, at 475 (1st ed.2003) (hereafter Tegland, Civil Procedure). It is distinguished from claim preclusion "`in that, instead of preventing a second assertion of the same claim or cause of action, it prevents a second litigation of issues between the parties, even though a different claim or cause of action is asserted.'" Rains v. State, 100 Wash.2d 660, 665, 674 P.2d 165 (1983) (emphasis added) (quoting Seattle-First Nat'l Bank v. Kawachi, 91 Wash.2d 223, 225-26, 588 P.2d 725 (1978)); Kyreacos v. Smith, 89 Wash.2d 425, 427, 572 P.2d 723 (1977); see Shoemaker v. City of Bremerton, 109 Wash.2d 504, 507, 745 P.2d 858 (1987); Philip A. Trautman, Claim and Issue Preclusion in Civil Litigation in Washington, 60 WASH. L.REV. 805, 805, 813-14, 829 (1985) (hereafter Trautman, Claim and Issue Preclusion); Tegland, Civil Procedure § 35.32, at 475. Claim preclusion, also called res judicata,[3] "is intended to prevent relitigation of an entire cause of action and collateral estoppel is intended to prevent retrial of one or more of the crucial issues or determinative facts determined in previous litigation." Luisi Truck Lines, Inc. v. Wash. Utils. & Transp. Comm'n, 72 Wash.2d 887, 894, 435 P.2d 654 (1967).
The collateral estoppel doctrine promotes judicial economy and serves to prevent inconvenience or harassment of parties. Reninger v. Dep't of Corr., 134 Wash.2d 437, 449, 951 P.2d 782 (1998). Also implicated are principles of repose and concerns about the resources entailed in repetitive litigation. Tegland, Civil Procedure § 35.21, at 446. Collateral estoppel provides for finality in adjudications. Trautman, Claim and Issue Preclusion, 60 WASH. L.REV. at 806.
Collateral estoppel may be applied to preclude only those issues that have actually been litigated and necessarily and finally determined in the earlier proceeding. Shoemaker, 109 Wash.2d at 507, 745 P.2d 858. Further, the party against whom the doctrine is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding. Nielson v. Spanaway Gen. Med. Clinic, Inc., 135 Wash.2d 255, 264-65, 956 P.2d 312 (1998). For collateral estoppel to apply, the party seeking application of the doctrine must establish that (1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding, (2) the earlier proceeding ended in a judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party to, or in privity with a party to, the earlier proceeding, and (4) application of collateral estoppel does not work an injustice on the party against whom it is applied. Reninger, 134 Wash.2d at 449, 951 P.2d 782; State v. Williams, 132 Wash.2d 248, 254, 937 P.2d 1052 (1997); Claim and Issue Preclusion, 60 WASH. L.REV. at 831.
Both state and federal courts have applied collateral estoppel where an issue was adjudicated by an administrative agency in the earlier proceeding. E.g., Univ. of Tenn. v. Elliott, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986); Miller v. County of Santa Cruz, 39 F.3d 1030 (9th Cir.1994); Reninger, 134 Wash.2d 437, 951 P.2d 782; Shoemaker, 109 Wash.2d 504, 745 P.2d 858; Luisi Truck Lines, 72 Wash.2d 887, 435 P.2d 654; see Claim and Issue Preclusion, 60 WASH. L.REV. at 830. The United States Supreme Court has applied issue preclusion to enforce repose where an administrative agency has acted in a judicial capacity and resolved disputed issues of fact:
Such repose is justified on the sound and obvious principle of judicial policy that a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise. To hold otherwise would, as a general matter, impose unjustifiably upon those who have already shouldered their burdens, and drain the resources of an adjudicatory system with disputes resisting resolution.
Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 107-08, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991). Three additional factors must be considered under Washington law *962 before collateral estoppel may be applied to agency findings: (1) whether the agency acted within its competence, (2) the differences between procedures in the administrative proceeding and court procedures, and (3) public policy considerations. Reninger, 134 Wash.2d at 450, 951 P.2d 782; Shoemaker, 109 Wash.2d at 508, 745 P.2d 858; State v. Dupard, 93 Wash.2d 268, 275, 609 P.2d 961 (1980).[4]
Christensen has conceded that the identical issues, final judgment, and privity requirements are satisfied.[5] Thus, at issue are the injustice factor and public policy considerations, and whether the agency acted within its competence. The injustice component is generally concerned with procedural, not substantive irregularity. Thompson v. Dep't of Licensing, 138 Wash.2d 783, 795-99, 982 P.2d 601 (1999). This is consistent with the requirement that the party against whom the doctrine is asserted must have had a full and fair opportunity to litigate the issue in the first forum. Accordingly, applying collateral estoppel may be improper where the issue is first determined after an informal, expedited hearing with relaxed evidentiary standards. Vasquez, 148 Wash.2d 303, 59 P.3d 648; Williams, 132 Wash.2d 248, 937 P.2d 1052. In addition, disparity of relief may be so great that a party would be unlikely to have vigorously litigated the crucial issues in the first forum and so it would be unfair to preclude relitigation of the issues in a second forum. Reninger, 134 Wash.2d at 453, 951 P.2d 782.
We have also acknowledged that the injustice factor "recognizes the significant role of public policy." Vasquez, 148 Wash.2d at 309, 59 P.3d 648; Williams, 132 Wash.2d at 257, 937 P.2d 1052. In Dupard, the issue was whether collateral estoppel would be applied in a criminal prosecution where the charges were based on conduct that had been the subject of a parole revocation decision by the Board of Prison Terms and Paroles. The court concluded that the legislature contemplated that new crimes would be processed initially in the criminal justice system and not in a parole revocation hearing. The court specifically noted that RCW 9.95.120 provided a parole hearing within 30 days for violations other than felonies or misdemeanors. Dupard, 93 Wash.2d at 276, 609 P.2d 961. This indicator of legislative intent weighed against application of collateral estoppel.
In Williams, the court determined that public policy reasons weighed against application of collateral estoppel to bar a criminal prosecution for welfare fraud where the same conduct had been the subject of *963 Department of Social and Health Services proceedings. We noted that the purposes of the two proceedings are completely different  one to determine if overpayments had been received and to determine repayment if they had been received, and the other to determine whether a crime had been committed. Williams, 132 Wash.2d at 257, 937 P.2d 1052. Further, we noted that application of collateral estoppel would result in the State effectively having to choose between prosecuting for criminal charges in the administrative forum, with attendant inefficiency and reallocation of resources, or forgoing the administrative hearing and recovery of financial losses because of the potential collateral estoppel effect of the administrative decision. Williams, 132 Wash.2d at 258, 937 P.2d 1052.
Our decisions thus recognize both the procedural aspects of the injustice inquiry as well as public policy considerations.
The Court of Appeals here, relying on Smith, concluded that the injustice-public policy considerations attendant to the tort of wrongful discharge in violation of public policy dictate that collateral estoppel should not apply. The court believed that Smith undercuts Reninger and discourages use of the administrative forum.
Samaritan contends that the court misinterpreted Reninger and Smith. We agree. We also agree with Samaritan that, contrary to Christensen's contention, the analysis in State v. Vasquez, 148 Wash.2d 303, 59 P.3d 648 (2002) does not foreclose application of collateral estoppel here.
In Reninger, two correctional officers were demoted for leaving weapons unattended. A hearing examiner rejected their challenge to the demotions. The officers appealed to the Personnel Appeals Board. The Board, after another hearing, concluded that the officers committed gross misconduct, and their demotions were appropriate. The board rejected their arguments that they had been "set up" by other officers. The officers resigned and later brought an action against the State alleging wrongful constructive discharge in violation of public policy and against the other officers alleging tortious interference with their employment.
The court held that the officers failed to state a claim for wrongful discharge because they did not show their employment was terminated for a reason that contravenes public policy. Reninger, 134 Wash.2d at 446, 951 P.2d 782. The court therefore left unresolved the question whether the tort claim was available in the case of public employees terminable only for cause. The court then determined that collateral estoppel barred the tortious interference claim because the board had found that the officers committed misconduct and that the other officers did not conspire against them.
In Smith, the court answered the unresolved question in Reninger, holding that public employees terminable only for cause may bring a tort action for wrongful discharge in violation of public policy. In addition, we concluded that such employees are not required to exhaust administrative remedies because "the right to be free from wrongful termination in violation of public policy is independent of any underlying contractual agreement or civil service law." Smith, 139 Wash.2d at 809, 991 P.2d 1135. The court noted the "public interest in prohibiting employers from acting in a manner contrary to fundamental public policy." Id. We explained that the conclusion that exhaustion is not required is "even more compelling after" Reninger because under Reninger
an employee who loses in an administrative proceeding will be collaterally estopped from attempting to prove the distinct tort of wrongful discharge in violation of public policy. Thus, if employees are required to exhaust all available administrative remedies in order to bring a civil suit for wrongful termination, the administrative remedy could be the only remedy. Such a rule goes beyond the usual understanding of exhaustion as a prerequisite to seeking judicial relief ... and ignores the fundamental distinction between contract and tort actions.
Smith, 139 Wash.2d at 811, 991 P.2d 1135.
The Court of Appeals identified this quote as the "center point" of Christensen's appeal, reasoning that Reninger encouraged resort to administrative remedies but Smith *964 discourages that choice when the tort of wrongful discharge in violation of public policy is implicated. Christensen, 114 Wash. App. at 588, 60 P.3d 99. The Court of Appeals believed that Smith was based on a determination that the public policy nature of the tort is so important that PERC adjudication must be optional. Thus, the Court of Appeals concluded that "an aggrieved employee whose union fails to obtain a remedy from PERC should not be precluded from seeking relief on his own under the separate tort theory of wrongful discharge in violation of public policy." Christensen, 114 Wash. App. at 589, 60 P.3d 99.[6]
Reninger did not resolve the issue presented here. It did, however, apply collateral estoppel to administrative determinations of issues of fact, and Smith does not undercut that holding. Instead, Smith describes the holding in Reninger as a "compelling" reason for its conclusion that exhaustion is not required specifically because administrative findings may have preclusive effect. Smith, 139 Wash.2d at 811, 991 P.2d 1135.
The Court of Appeals reads too much into Smith. Collateral estoppel was not at issue in Smith. Thus, Smith does not stand for the proposition that as a matter of public policy a wrongful discharge claim may be brought in court regardless of whether a central factual issue was submitted to and decided by an administrative tribunal.
It is true that choosing an administrative proceeding may ultimately preclude a later tort claim due to an agency's factual findings. However, this is the essence of collateral estoppel. There is nothing inherently unfair about this result provided the party has the full and fair opportunity to litigate, there is no significant disparity of relief, and all the other requirements of collateral estoppel are satisfied. In addition, this record establishes that Christensen chose to litigate in the administrative setting. Having done so, nothing in Smith or its analysis of the exhaustion issue indicates he would not be bound by the agency's factual determinations. To the contrary, Smith acknowledges that administrative findings can have preclusive effect.
Regardless of Smith, we also do not agree that the public policy underpinnings of the wrongful discharge tort dictate that collateral estoppel cannot be applied in this case. We have noted the importance of the tort of wrongful discharge in violation of public policy, recognizing that the tort is not designed to protect purely private interests but instead "operates to vindicate the public interest in prohibiting employers from acting in a manner contrary to fundamental public policy." Smith, 139 Wash.2d at 801, 991 P.2d 1135 (italics omitted). However, the doctrine of collateral estoppel may be applied where important interests are at stake. The United States Supreme Court has held, for example, that findings by a state administrative body will be given preclusive effect in a subsequent 42 U.S.C. § 1983 claim of racially motivated discharge from employment, provided the requirements for issue preclusion are otherwise satisfied. Elliott, 478 U.S. at 794-99, 106 S.Ct. 3220. Similarly, under Washington law preclusive effect can be given in a § 1983 civil rights action to an administrative agency's earlier factual findings that the employee's reductions in rank were not retaliatory. Shoemaker, 109 Wash.2d 504, 745 P.2d 858. Simply because the tort action rests on public policy does not mean that public policy dictates that collateral estoppel should never be applied.
Christensen says, though, that the legislature expressed relevant public policy in RCW *965 49.32.020, and under Vasquez collateral estoppel may not be applied to contravene that policy by effectively precluding a wrongful discharge claim. He maintains that Vasquez has limited Reninger to its facts.
Vasquez is consistent with Reninger and with the doctrine of collateral estoppel in general. In Vasquez, a hearing examiner in a license revocation hearing that preceded the defendant's criminal prosecution found that the arresting officer lacked probable cause to stop the defendant. The defendant argued that collateral estoppel barred the State from revisiting the issue of probable cause in the criminal action, and therefore his convictions for driving under the influence and possession of cocaine should be dismissed. This court declined to give collateral estoppel effect to the administrative determination on probable cause, reasoning that administrative license revocation proceedings are designed to provide swift and certain punishment for those who drink and drive, in an expedited informal hearing with relaxed evidentiary standards. Vasquez, 148 Wash.2d at 315-16, 59 P.3d 648. The legislative purpose of swift and expeditious hearings would be frustrated if the State was forced to fully litigate matters at the administrative level because such litigation would cause delays and deplete scarce prosecutorial resources. Id. at 317-18, 59 P.3d 648. The court distinguished Reninger on the ground that the procedures in the administrative proceeding in Reninger were far more extensive. Id. at 314 n. 9, 59 P.3d 648.[7]
Our focus on legislative intent in Vasquez accords with that in other cases where courts have declined to apply collateral estoppel. If a legislative body indicates its intent on the matter of preclusion, that intent generally controls whether the judicially applied doctrine of collateral estoppel will apply. RCW 50.32.097, for example, provides that any finding or other determination by the Employment Security Department "shall not be conclusive, nor binding, nor admissible as evidence" in any action outside Title 50 RCW.[8] In contrast, RCW 26.27.061 provides for the conclusive effect of court legal and factual determinations on child custody. The intent need not be express. See, e.g., Elliott, 478 U.S. at 795-96, 106 S.Ct. 3220 (language and legislative history of Title VII of the Civil Rights Act of 1964 shows congressional intent that unreviewed state administrative proceedings do not have preclusive effect on Title VII claims); Astoria Fed. Sav. & Loan, 501 U.S. 104, 111 S.Ct. 2166, 115 L.Ed.2d 96 (finding congressional intent that preclusion not apply to administrative proceedings where claim is brought under Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621); Dupard, 93 Wash.2d at 276-77, 609 P.2d 961 (finding legislative intent that new crimes be processed in the criminal justice system rather than by a parole revocation hearing).
Here, given the authority granted PERC and express legislative recognition of PERC's expertise in RCW 41.58.005(1), we do not believe that the legislature had in mind that only a court action could vindicate the public policy stated in RCW 49.32.020. Indeed, the public policy that Christensen seeks to vindicate is the same public policy that PERC is empowered to enforce  the fair and appropriate collective bargaining between public employees and their employers, untainted by discrimination against union activists. See RCW 41.58.020; RCW 41.56.140. Moreover, this case does not present policy concerns that weighed heavily in cases like Vasquez and Williams, i.e., concerns relating *966 to efficient allocation of limited state resources.
Our consideration of procedural fairness in Vasquez is also a traditional and essential part of deciding whether collateral estoppel will apply. Thus, Vasquez does not break new ground or depart from Reninger and other cases applying collateral estoppel to preclude relitigation of an issue already determined by an administrative tribunal. And, simply because a subject implicates public policy does not mean that application of collateral estoppel contravenes public policy.
Christensen complains of procedural unfairness, arguing that his claim was only one of several unfair practices claims brought by a union and that he was represented by a union lawyer rather than by his own lawyer. He says that he did not actively participate in the union's complaint or legal strategies and decision-making process. Christensen maintains that the union lawyer did not independently investigate his claim, that he had little interaction with her, and that he was not advised of his right to appeal the hearing examiner's decision.
The record establishes, however, that Christensen consented to and approved of the union's activities on his behalf, elected to pursue administrative remedies, discussed his claims with the union's national representative before and after the amended complaint was filed and provided documentary evidence to the union's lawyer. Notably, the union's national representative's uncontroverted declaration states that the complaint and request to amend the complaint were prepared with Christensen's consent, that a number of conversations took place between him and Christensen about the status of the complaint, that Christensen was informed about the progress of the complaint, and that the union would not file a complaint on Christensen's behalf without his consent or approval. The union's lawyer acted on Christensen's behalf, and made an opening statement, called witnesses, cross-examined Samaritan's witnesses, offered exhibits, and made evidentiary objections. The union's posthearing brief addressed the evidence regarding Christensen's discharge.
The undisputed evidence is that Christensen consented to his claim being advanced by the union and could have declined. As the Court of Appeals noted, Christensen cited no authority preventing him from hiring his own counsel, and no authority that the union lawyer's tactical decisions equate to procedural inadequacy. Christensen, 114 Wash. App. at 585-86, 60 P.3d 99. Individuals may bring unfair practices complaints. WAC 391-45-010. Accordingly, the fact that the union brought the claim and Christensen was represented by a union lawyer is not a reason to deny application of collateral estoppel. PERC administrative proceedings are governed by the Administrative Procedure Act (chapter 34.05 RCW) and this court has noted the procedural protections afforded under this act. Reninger, 134 Wash.2d at 450-51, 951 P.2d 782. We reiterate that whether the decision in the earlier proceeding was substantively correct is generally not a relevant consideration in determining whether application of collateral estoppel would work an injustice. Thompson, 138 Wash.2d at 795-800, 982 P.2d 601.
We perceive no procedural unfairness resulting in injustice to Christensen from applying collateral estoppel. A full and fair opportunity to litigate is required, and Christensen had that opportunity. See Nielson, 135 Wash.2d at 264-65, 956 P.2d 312; Barr v. Day, 124 Wash.2d 318, 324-25, 879 P.2d 912 (1994); Rains v. State, 100 Wash.2d 660, 666, 674 P.2d 165 (1983).
Christensen argues, though, that a significant disparity in remedies exists and therefore collateral estoppel should not apply. In Reninger, the court noted that the Personnel Appeals Board has authority to grant relief in the form of reinstatement and back pay, sick leave, vacation accrual, retirement, and other credits. The court concluded there was no disparity of relief that justified a refusal to apply collateral estoppel, despite the argument that a court could award monetary damages for a successful tortious interference claim. In Shoemaker, the court observed that the administrative body there could award reinstatement and back pay and this was the same relief available *967 in federal court in a § 1983 civil rights action. The fact that emotional damages were not available in the administrative proceedings was not enough disparity to conclude that it would be against public policy to apply collateral estoppel to the administrative findings.[9]
PERC has authority, if it finds an unfair labor practice, to "take such affirmative action as will effectuate the purposes and policy of this chapter [41.56 RCW], such as the payment of damages and the reinstatement of employees." RCW 41.56.160(2) (emphasis added). On Christensen's behalf, the union sought reinstatement, compensatory damages, including back pay, benefits and interest, and costs and attorney fees. Thus, the relief available from PERC places this case in the same category as Reninger and Shoemaker. The stakes were sufficient incentive in the administrative proceedings to vigorously litigate the issue of whether Christensen was discharged because of his union activities. There is no significant disparity of available relief that justifies the conclusion that application of collateral estoppel would work an injustice. Whether emotional distress damages were available is not a significant distinction. Shoemaker, 109 Wash.2d at 513, 745 P.2d 858.
We conclude that the injustice factor and public policy considerations do not foreclose application of collateral estoppel in this case.[10]
Finally, Samaritan argues that the Court of Appeals erroneously concluded that "[a]rguably, Samaritan failed to meet the agency `competence' criteria." Christensen, 114 Wash.App. at 589, 60 P.3d 99. The Court of Appeals said that in Smith this court reasoned that PERC is not competent to adjudicate a tort claim. Christensen, 114 Wash.App. at 589, 60 P.3d 99. Christensen argues that the Court of Appeals correctly determined that PERC lacks competence because it has no authority to decide a claim of wrongful discharge in violation of public policy. This argument confuses claim and issue preclusion.[11]
In order for an administrative decision to have collateral estoppel effect, the tribunal must have been competent to decide the issue. This case involves issue preclusion, and the same issue is involved, i.e., whether Samaritan discharged Christensen in retaliation for his union activity. It does not matter that the claim or cause of action that Christensen seeks to pursue in superior court is not the same claim or cause of action that was decided by PERC, or that PERC lacks authority to decide the tort claim; this case does not involve claim preclusion, which applies to preclude the relitigation of the same claim or cause of action. Trautman, Claim and Issue Preclusion, 60 WASH. L.REV. at 812.[12]
The relevant inquiry here is whether PERC's determination of the issue in question is within its competence. That is, are its factual findings regarding the decision to discharge within its competence to determine? The agency found that the union failed to make a prima facie case that Christensen was discharged because of his union activities in violation of RCW 41.56.140(1) and found instead that he was discharged because of inappropriate behavior involving the volunteer rider.
*968 Both statute and case law recognize PERC's expertise in labor relations. RCW 41.58.005(1); City of Yakima v. Int'l Ass'n of Firefighters, 117 Wash.2d 655, 674-75, 818 P.2d 1076 (1991); Clallam County v. Pub. Employment Relations Comm'n, 43 Wash. App. 589, 596-97, 719 P.2d 140 (1986) (noting PERC's expertise where allegation of violation of rights protected under the Public Employees' Collective Bargaining Act, specifically RCW 41.56.140(1), were made). Clearly, PERC is competent to resolve factual issues raised in unfair labor practices complaints, such as a claim of discharge in retaliation for engaging in union activity. In order to resolve the claimed unfair labor practice involving Christensen, PERC had the issue of the reason for his discharge squarely before it.
In Shoemaker this court was confronted by a similar argument. There, a public employee petitioned the Bremerton Civil Service Commission for reinstatement, contending he had been demoted in bad faith and in violation of RCW 41.12.090 in retaliation for testimony he gave regarding irregularities in his department's employment evaluations. The commission concluded his demotion was not retaliatory but was instead a valid reduction in force. The employee brought a civil rights action in federal court, and ultimately the Ninth Circuit certified to this court the question whether the commission's determination was binding under collateral estoppel principles. This court held that collateral estoppel applies, rejecting the employee's claim that the commission had no competence to decide his civil rights claim. Shoemaker, 109 Wash.2d at 512-13, 745 P.2d 858. The court said this argument confused claim and issue preclusion, pointing out that while the commission could not have decided the § 1983 civil rights claim, it may have decided a fact common to the administrative claim for reinstatement and the § 1983 claim. Shoemaker, 109 Wash.2d at 512, 745 P.2d 858. The court said, "[t]he fact that the issue determined is also a central element in the federal civil rights claim does not mean that giving preclusive effect to that determination is an improper application of claim preclusion or that the Commission has acted beyond its competence." Id. at 512-13, 745 P.2d 858.[13]

CONCLUSION
Samaritan has shown that collateral estoppel is appropriately applied here to bar relitigating the issue of whether Christensen was discharged in retaliation for union activities. The fact that the tort of wrongful discharge in violation of public policy rests on public policy does not mean that application of collateral estoppel to preclude relitigating the reason for discharge violates public policy. The doctrine of collateral estoppel requires that the person against whom it is asserted must have had a full and fair opportunity to litigate the relevant issue in the prior proceeding, and Christensen has had that opportunity.
The decision of the Court of Appeals is reversed.
ALEXANDER, C.J., and JOHNSON, BRIDGE, OWENS, and FAIRHURST, JJ., concur.
SANDERS, J. (dissenting).
Kimball D. Christensen sought damages resulting from Samaritan Hospital's alleged *969 wrongful discharge in violation of public policy, claiming his employment was terminated in consequence of his participation in union activities. Though today's majority holds as a matter of law Mr. Christensen cannot proceed with his suit, one thing is certain: no jury has heard testimony, examined witness demeanor, weighed credibility, or rendered a verdict one way or another as to the merits of Mr. Christensen's legal claim. Nor has any real court of law, acting through a real judge, determined his claim on its merits.
To the contrary, the majority denies Mr. Christensen his constitutional right to present his case to a jury of his peers because a lone executive branch officer for the Public Employment Relations Commission (PERC) believed the counterstory of the woman Mr. Christensen allegedly sexually harassed, Stephanie Hiatt, over Mr. Christensen's version of the facts. As a result, Mr. Christensen is left at the courthouse steps with no opportunity to present his case to an independent judiciary, much less a jury. Preclusion here epitomizes the intrinsic deficiencies of collateral estoppel where the asserted basis for preclusion is an administrative adjudication. I would protect Mr. Christensen's right to his day in court and strongly dissent from any contrary view.

I. Inviolate Means Inviolate
While the preclusion doctrines of res judicata and collateral estoppel promote judicial economy and finality, see Clark v. Baines, 150 Wash.2d 905, 913, 84 P.3d 245 (2004), important goals no doubt, we must remember neither doctrine is "intended to deny a litigant his day in court," Luisi Truck Lines, Inc. v. Wash. Utils. & Transp. Comm'n, 72 Wash.2d 887, 894, 435 P.2d 654 (1967). But application of collateral estoppel to administrative adjudications does, quite literally, "deny a litigant his day in court" because he never had one.
Moreover, I maintain the majority's conclusion is unsupported by a proper application of the test to determine whether to apply collateral estoppel. See infra part II. However I first lament the disturbing trend in our jurisprudence, namely vaulting inferior goals of judicial economy and finality over justice and constitutional guaranties. After all, what could be more economical and final than closing down the courthouse?
Paramount in our state is the right to trial by jury as part of an independent judiciary, which is expressly secured by our constitution without equivocation:
The right of trial by jury shall remain inviolate, but the legislature may provide for a jury of any number less than twelve in courts not of record, and for a verdict by nine or more jurors in civil cases in any court of record, and for waiving of the jury in civil cases where the consent of the parties interested is given thereto.
CONST. art. I, § 21 (emphasis added). The founders' use of the word "inviolate" suggests nothing less than an unwavering guaranty, as we so recognized 15 years ago: "For such a right to remain inviolate, it must not diminish over time and must be protected from all assaults to its essential guaranties." Sofie v. Fibreboard Corp., 112 Wn.2d 636, 656, 771 P.2d 711, 780 P.2d 260 (1989). Furthermore "the essence of the right's scope" is the jury's province, duty, and ability to make factual determinations. Id. at 645, 771 P.2d 711.
Sofie withstood public support for curing "rising insurance premiums for liability coverage" by way of "tort reform," id. at 638, 771 P.2d 711, to uphold this fundamental constitutional right, striking down a statutory limitation on noneconomic damages available in a civil action, id. at 669, 771 P.2d 711. Yet despite Sofie's reluctance to permit the erosion of constitutional rights to serve public policy objectives, this court recently employed collateral estoppel to prevent two litigants from exercising their right to a jury. See Nielson v. Spanaway Gen. Med. Clinic, Inc., 135 Wash.2d 255, 956 P.2d 312 (1998). Nielson afforded preclusive effect to a federal judge's determination of damages despite the plaintiffs' lack of any opportunity to present their evidence to a jury. Id. at 269, 956 P.2d 312. Though Nielson prevented litigants from presenting their claim to a jury, at least they had the opportunity to present their claim to a federal judge in a bench trial. But here Mr. Christensen must settle for a *970 nonjudicial ruling from an employee of the executive branch.
Despite Sofie's promise to rebuke any attempt to "diminish over time" the fundamental right to a jury, Sofie, 112 Wash.2d at 656, 771 P.2d 711, application of collateral estoppel to administrative adjudications which subsequently deny a litigant his or her right to a jury is contrary to article I, section 21's constitutional guaranty. Reninger v. Dep't of Corr., 134 Wash.2d 437, 454, 951 P.2d 782 (1998), overturned a jury verdict by way of administrative collateral estoppel to deny two civil servants' claims of tortious interference with business expectancy. This holding was an unwarranted invasion of the jury's province to decide the merits of a litigant's factual allegations and a stark denial of access to an independent judiciary. But Reninger has been overruled sub silentio by subsequent enlightened decisions.[1]See State v. Vasquez, 148 Wash.2d 303, 317-18, 59 P.3d 648 (2002) (discussed infra).
As the right to a jury is so elementary in our jurisprudence, I posit a litigant's opportunity to present his or her case to that jury should not be denied unless he or she validly waives that right, see Godfrey v. Hartford Cas. Ins. Co., 142 Wash.2d 885, 898, 16 P.3d 617 (2001) ("waiver of the right to jury trial `must be voluntary, knowing, and intelligent'" (quoting City of Bellevue v. Acrey, 103 Wash.2d 203, 207, 691 P.2d 957 (1984))), or the claim is appropriately precluded by a prior judicial adjudication. This would not affect preclusion rightly afforded to summary judgments, consensual arbitral decisions, or bench trials where the litigant had validly waived the jury right. Such cases involve either a failure of the party against whom preclusion is sought to provide a genuine issue of fact for the jury to determine, a contractual waiver of his or her right to a jury, or an express desire to present a case to a judge rather than a jury.
Those cases, however, are markedly different from cases like the one at bar where the litigant proceeds to an administrative forum, not an independent judiciary. Despite the constitutional guaranty that all genuine factual disputes should be resolved by a jury, the majority asserts a litigant who, unknowing of the consequences, proceeds to the administrative tribunal is forever barred from asserting this right.
And the sword cuts both ways. In cases where the administrative claimant prevails, he or she may then seek to preclude the defending party from relitigating an issue before a jury. Such an scenario would cut off Samaritan Hospital's right to defend before a jury the merits of its decision to terminate Mr. Christensen's employment, as it was a party to the administrative PERC hearing at issue here. The defending party would have no choice whatsoever of who should be the fact-finder yet is forced to accept the factual determination of one person as binding  a person who is not even a member of the judiciary. This result is facially contrary to the underlying principle of the jury system, not to mention an independent judiciary. As the Supreme Court has noted, "the jury trial provisions in the Federal and State Constitutions reflect a fundamental decision about the exercise of official power  a reluctance to entrust plenary powers over the life and liberty of the citizen to one judge or to a group of judges." Duncan v. Louisiana, 391 U.S. 145, 156, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).[2]
While our constitution demands the right to have factual disputes be resolved by a jury of one's peers, the decision of a lone administrative hearing officer eviscerates the litigant's right to a jury. Such also undermines the necessary separation of the judicial and *971 executive branches of government. As Dean Roscoe Pound put it:
There are those in our law schools today who advocate a complete fusion of legislative, executive, and judicial power in administrative boards and bureaus and agencies. Even without constitutional amendment authorizing this, administrative agencies are likely to achieve it in substance unless judicial scrutiny of their action can be preserved and made effective....

Once established an absolute bureaucracy will not be easy to dethrone. Control of an omnicompetent administrative hierarchy, accountable only to an ultimate administrative head, will prove as effective a means of absolute government as was formerly control of an army.
Roscoe Pound, The Rise of Administrative Justice, in ADMINISTRATIVE LAW: ITS GROWTH, PROCEDURE, AND SIGNIFICANCE 35-36 (1942) (emphasis added). The growth of administrative collateral estoppel has reached its critical mass. Either the right to a jury remains "inviolate" as the constitution so demands (article I, section 21), thereby preserving the right of access to justice in a court of law, or this fundamental constitutional guaranty is finished. I follow the constitution and choose the former.

II. Even Allowing Administrative Collateral Estoppel to Continue, Proper Application of Test Still Allows Mr. Christensen His Day In Court
Despite my continued reservations to acquiesce in administrative collateral estoppel when our constitution mandates factual disputes be reserved for the jury, I acknowledge our jurisprudence has permitted such preclusion on occasion. That said, however, the majority has diverted from a principled application of the inquiry used to determine whether to preclude relitigation of an issue. Were the majority to faithfully examine collateral estoppel in the present context, Mr. Christensen would not be left without any opportunity for judicial redress.
Washington follows a stringent four-pronged inquiry which requires affirmative answers to each of the following questions before raising the collateral estoppel flag:
(1) the issue decided in the prior adjudication is identical to the one presented in the current action, (2) the prior adjudication must have resulted in a final judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication, and (4) precluding relitigation of the issue will not work an injustice on the party against whom collateral estoppel is to be applied.
Clark, 150 Wash.2d at 913, 84 P.3d 245. The burden to affirmatively prove each and every prong of this inquiry rests with the party seeking preclusion, and that party's failure to do so prevents application of the doctrine. McDaniels v. Carlson, 108 Wash.2d 299, 303, 738 P.2d 254 (1987).
Here we do not confront the typical collateral estoppel scenario. Rather here the claimed basis for preclusion is an administrative adjudication, not a real "final judgment on the merits" by a court possessing both personal and subject matter jurisdiction. See RESTATEMENT (SECOND) OF JUDGMENTS §§ 1, 17 (1980). Nonetheless, that deficiency is per se not determinative, as our cases recognize collateral estoppel may still prevent relitigation of an issue decided by an administrative tribunal upon consideration of three additional criteria: "(1) whether the agency acting within its competence made a factual decision; (2) agency and court procedural differences; and (3) policy considerations." State v. Dupard, 93 Wash.2d 268, 275, 609 P.2d 961 (1980). As "[p]olicy arguments have been often the deciding factor when collateral estoppel is based upon prior administrative determination," we flatly refuse to apply preclusion "when its application would contravene public policy." Id. at 275-76, 609 P.2d 961.
Utilizing the aforementioned criteria, I find three independent grounds to affirm the Court of Appeals' decision to allow Mr. Christensen his day in court: first, applying collateral estoppel here contravenes public policy; second, the procedural deficiencies of PERC hearings demand open access to the courts; and finally, such application works a *972 patent injustice against litigants in Mr. Christensen's shoes. My reasons follow.

A. Contravening Public Policy
The legal basis for Mr. Christensen's cause of action is the tort of wrongful discharge in violation of public policy. We examined this tort extensively in Smith v. Bates Technical College, 139 Wash.2d 793, 804, 811, 991 P.2d 1135 (2000), holding an employee who is terminable only for cause may have a cause of action under the tort and that such employee does not have to exhaust his or her administrative remedies before an agency like PERC. In so doing we expressly recognized, "[I]n Washington the tort of wrongful discharge is not designed to protect an employee's purely private interest in his or her continued employment; rather, the tort operates to vindicate the public interest in prohibiting employers from acting in a manner contrary to fundamental public policy." Id. at 801, 991 P.2d 1135.
The majority correctly recognizes the more comprehensive[3] doctrine of res judicata is not presently at issue. This is rightfully so, as PERC has no authority to adjudicate claims seeking damages for the tort of wrongful discharge in violation of public policy. Smith, 139 Wash.2d at 811, 991 P.2d 1135. But applying collateral estoppel here denies the damage claim before it can be asserted. This case allows collateral estoppel to wholly prevent any attempt to "vindicate the public interest" through a tort action. Id. at 801, 991 P.2d 1135. Yet the majority brushes aside its net effect by claiming the collateral estoppel only "implicates" public policy rather than "contravenes" it. Majority at 966 (emphasis omitted). I disagree. Erecting a preclusive barrier to a litigant's opportunity to litigate the merits of his or her wrongful discharge claim stands in direct opposition to the very essence of the public policy to "vindicate the public interest." Smith, 139 Wash.2d at 801, 991 P.2d 1135.
This view is supported by Dupard, the case where we first recognized the impropriety of collateral estoppel when the application thereof "contravene[s] public policy." Dupard, 93 Wash.2d at 276, 609 P.2d 961. There we unanimously declined to afford preclusive effect to a parole revocation officer's administrative determination that the defendant was not guilty of possession of a controlled substance. Our decision was grounded in "[p]ractical public policy," which we determined to "require[] that new criminal matters, when charged in the criminal justice system, must be permitted to be there decided, unhampered by any parallel proceedings of the Board of Prison Terms and Paroles." Id. at 277, 609 P.2d 961. The majority avers public policy does not demand as much here due to the legislature's recognition of PERC's expertise. See majority at 965-66. However nothing in Dupard suggested the Board of Prison Terms and Paroles lacked expertise to determine whether Dupard had possessed cocaine or heroin, a condition precedent to revoking his parole. Cf. Dupard, 93 Wash.2d at 270-71, 609 P.2d 961. Nonetheless, we held criminal prosecutions should be decided in the courts rather than in the administrative tribunals. Given that "PERC does not have the authority to adjudicate wrongful discharge tort actions," Smith, 139 Wash.2d at 805, 991 P.2d 1135, it logically follows from Dupard that no administrative determination should preclude that tort from being litigated in the only available forum: the court.

B. Procedural Differences
In addition, collateral estoppel must be rejected when there are procedural differences between the agency adjudication and its judicial corollary. Dupard, 93 Wash.2d at 275, 609 P.2d 961. Though this record demonstrates the PERC hearing itself resembled a trial by its use of counsel and evidentiary objections (notwithstanding the absence of those apparently inconsequential aspects of an independent judiciary and a jury, both of which are supposedly constitutionally preserved), one glaring deficiency of PERC hearings is more than enough to reject collateral *973 estoppel here: the absence of any meaningful discovery.
By regulation:
The power of subpoena shall be limited to compelling the testimony of witnesses and production of documents or other tangible evidence at hearings conducted by the agency [PERC].
Pursuant to the authority delegated to the agency by RCW 34.05.446(2), other forms of discovery shall not be available in proceedings before the agency.

WAC 391-08-300 (emphasis added). PERC hearings  no matter how much they resemble a judicial proceeding during the actual hearing (again, pay no attention to the empty jury box and the executive officer sitting behind the bench)  are simply not on par with judicial actions. We have noted the "broad right of discovery is necessary to ensure access to the party seeking the discovery. It is common legal knowledge that extensive discovery is necessary to effectively pursue either a plaintiff's claim or a defendant's defense." Doe v. Puget Sound Blood Ctr., 117 Wash.2d 772, 782, 819 P.2d 370 (1991) (emphasis added). Despite the necessity to do so to "effectively pursue" his claim, id., Mr. Christensen was by regulation forbidden from conducting depositions, CR 31, submitting interrogatories, CR 33, or requesting admissions, CR 36.
As a matter of law then, the procedural differences between PERC hearings and judicial actions demand rejection of collateral estoppel here.

C. Injustice
The majority asserts "[t]here is nothing inherently unfair" about using collateral estoppel to deny Mr. Christensen the opportunity to present his case before a jury. Majority at 964. I strongly disagree. It is "unfair" to deny someone access to an independent judiciary based on the executive actions of a hearing examiner who is vested with limited jurisdiction and eschews the judicial and evidentiary norms of decision making.
Not once has any Washington court applied collateral estoppel to an administrative determination to bar a subsequent prosecution. See State v. Mullin-Coston, 152 Wash.2d 107, 121, 95 P.3d 321 328 (2004); Vasquez, 148 Wash.2d at 318, 59 P.3d 648; State v. Williams, 132 Wash.2d 248, 257-58, 937 P.2d 1052 (1997); State v. Cleveland, 58 Wash.App. 634, 643-44, 794 P.2d 546 (1990). Williams is instructive. There we refused to apply an administrative determination that a mother had not acted willfully and knowingly made false statements to obtain welfare payments to collaterally estop the State from prosecuting the mother for welfare fraud. See Williams, 132 Wash.2d at 258, 937 P.2d 1052. We grounded our decision on our refusal to force the State into a catch-22, where "the State most likely would consider for[]going administrative hearings even though such hearings allow it to recoup financial losses resulting from fraud." Id.
Logically resulting from Williams was Vasquez. There we refused to afford preclusive effect to an administrative license suspension hearing at which the hearing officer concluded the police lacked probable cause to initially detain Vasquez's vehicle. Vasquez, 148 Wash.2d at 307, 317, 59 P.3d 648. We "noted the `unfairness of permitting an adjudication in an informal administrative setting... to bar later criminal prosecutions.'" Id. at 309, 59 P.3d 648 (quoting Thompson v. Dep't of Licensing, 138 Wash.2d 783, 796, 982 P.2d 601 (1999)). Accordingly, we declined to "forc[e] the State to fully litigate matters at the administrative level [which] would cause delays and deplete already scarce resources within the prosecutor's office." Id. at 317-18, 59 P.3d 648. Vasquez rebuked collateral estoppel and allowed factual issues to be determined by an independent judiciary, a result in counterdistinction to Reninger, thus leading me to conclude Reninger was no longer sound law. See Vasquez, 148 Wash.2d at 318, 59 P.3d 648 (Sanders, J., concurring) ("conclud[ing] [Vasquez] ... in effect overrules Reninger sub silentio").
Even assuming arguendo Vasquez and Reninger could be harmonized on the ground "the procedures in the administrative proceeding in Reninger were far more extensive" than those in Vasquez, majority at 965 (citing Vasquez, 148 Wash.2d at 314 n. 9, 59 *974 P.3d 648), Reninger based its view on the similarities between the administrative hearings before the Personnel Appeals Board (PAB) and the judicial action at issue. Reninger, 134 Wash.2d at 451, 951 P.2d 782. Yet similarities existent in Reninger such as discovery are simply not present here. Compare id. at 451, 951 P.2d 782 ("[Reninger and Cohen] conducted formal depositions under oath prior to the PAB hearing.") with WAC 391-08-300 (prohibiting any discovery outside of subpoenaing documents for the PERC hearing). Thus, while I reject the notion Vasquez and Reninger are consistent with each other, Mr. Christensen's case leans far more toward Vasquez in any event.
The majority attempts however to distinguish Mr. Christensen's case, asserting "this case does not present policy concerns that weighed heavily in cases like Vasquez and Williams, i.e., concerns relating to efficient allocation of limited state resources." Majority at 965-66. True, the State's budget is not relevant here. However the public policy of ensuring a public employee's unfettered opportunity to seek redress in the courts where no equivalent opportunity lies elsewhere is at issue. And I know of no legal principle that relegates that policy below the conservation of finite government assets. To conclude otherwise suggests civil servants seeking judicial redress are not worthy of open access to the courts whereas the prosecutor's office is.
While this court loathed in Williams and Vasquez to put the State between a rock and a hard place, such is precisely what this majority does to Mr. Christensen and other similarly situated public servants. Those persons who otherwise would seek reinstatement of their occupation of choice will now consider forgoing the administrative hearing before PERC in lieu of damages available in a wrongful discharge tort action, or vice versa. Such a catch-22 is not something collateral estoppel permits as it would "work an injustice on the party against whom collateral estoppel is to be applied." Clark, 150 Wash.2d at 913, 84 P.3d 245.

CONCLUSION
I would affirm the Court of Appeals and allow Mr. Christensen his day in court before a jury of his peers. Such an opportunity in my view is not only constitutionally mandatory, but also outside the purview of collateral estoppel's reach. Because our majority denies Mr. Christensen this right, I dissent.
CHAMBERS and IRELAND, JJ., concur.
NOTES
[1] RCW 41.56.140(1) makes it an unfair labor practice for a public employer "[t]o interfere with, restrain, or coerce public employees in the exercise of their rights guaranteed by" chapter 41.56 RCW (pertaining to public employees' collective bargaining rights).
[2] A discharge that violates RCW 49.32.020 can give rise to a tort cause of action for discharge in violation of public policy. Bravo v. Dolsen Cos., 125 Wash.2d 745, 758, 888 P.2d 147 (1995). RCW 49.32.020 provides:

In the interpretation of this chapter and in determining the jurisdiction and authority of the courts of the state of Washington, as such jurisdiction and authority are herein defined and limited, the public policy of the state of Washington is hereby declared as follows:
WHEREAS, Under prevailing economic conditions, developed with the aid of governmental authority for owners of property to organize in the corporate and other forms of ownership association, the individual unorganized worker is commonly helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment, wherefore, though he should be free to decline to associate with his fellows, it is necessary that he have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protections; therefore, the following definitions of, and limitations upon, the jurisdiction and authority of the courts of the state of Washington are hereby enacted.
[3] The term "res judicata" has sometimes been used to apply to both issue and claim preclusion. Philip A. Trautman, Claim and Issue Preclusion in Civil Litigation in Washington, 60 WASH. L.REV. 805 (1985).
[4] The dissent maintains that applying collateral estoppel to bar relitigation of factual determinations made by an administrative agency violates the state constitutional right to a jury. We held, however, in the face of a similar dissenting view, that there is no state constitutional right to a jury trial on a factual issue that was already resolved in a prior proceeding. Nielson v. Spanaway Gen. Med. Clinic, Inc., 135 Wash.2d 255, 264-69, 956 P.2d 312 (1998); see, e.g., Reninger v. Dep't of Corr., 134 Wash.2d 437, 951 P.2d 782 (1998) (holding that public employees' claims of tortious interference with business expectancy were collaterally estopped by factual determinations made by the Personnel Appeals Board). While the dissent maintains that Reninger was overruled sub silentio by State v. Vasquez, 148 Wash.2d 303, 59 P.3d 648 (2002), the majority in Vasquez distinguished Reninger, disagreeing with the concurring opinion's identical claim in Vasquez that Reninger was overruled sub silentio. Vasquez, 148 Wash.2d at 314 n. 9, 59 P.3d 648 (majority); id. at 318, 59 P.3d 648 (concurrence).
[5] These concessions are appropriate. The factual issue in the administrative proceeding was whether Christensen's union activity was protected conduct and whether that conduct was a substantial or motivating factor for his discharge. City of Federal Way v. Pub. Employment Relations Comm'n, 93 Wash.App. 509, 512-14, 970 P.2d 752 (1998). To succeed on his wrongful discharge claim, he must prove that his protected union activity was a substantial factor in Samaritan's decision to discharge him. See Wilmot v. Kaiser Aluminum & Chem. Corp., 118 Wash.2d 46, 71-72, 821 P.2d 18 (1991); Gardner v. Loomis Armored, Inc., 128 Wash.2d 931, 941-42, 913 P.2d 377 (1996). The issues are identical. The unappealed PERC decision is a final judgment on the merits. Although, as explained in this opinion, Christensen complains that the action was brought by the union, and he was represented by a union lawyer, he does not claim that privity is lacking. Samaritan is correct that this requirement is satisfied. Because Christensen's interest was represented by his union, he was in privity with the union. Robinson v. Hamed, 62 Wash. App. 92, 100, 813 P.2d 171 (1991); Acree v. Air Line Pilots Ass'n, 390 F.2d 199, 202 (5th Cir. 1968); Handley v. Phillips, 715 F.Supp. 657, 667 (M.D.Pa.1989).
[6] The Court of Appeals cited only one case for the direct proposition that an adverse agency decision should not bar a "`complete exploration'" of a claim in a court of wrongful discharge in violation of public policy. Christensen, 114 Wash.App. at 590, 60 P.3d 99 (citing and quoting Hahn v. Arbat Sys. Ltd., 200 N.J.Super. 266, 491 A.2d 58, 59 (1985)). However, in a later case the New Jersey Superior Court, Appellate Division (the same level court as decided Hahn), distinguished Hahn on the grounds that the administrative decision in Hahn was reached following informal proceedings on unemployment compensation and was factually distinguishable in a number of respects, including the substantially different remedies sought. Ensslin v. Township of N. Bergen, 275 N.J.Super. 352, 372-73, 646 A.2d 452 (1994). The court in Ensslin added that it disagreed with Hahn to the extent that Hahn could be read to say that collateral estoppel can never be applied in any case dealing with a claim of discrimination. Ensslin, 275 N.J.Super. at 373, 646 A.2d 452. Hahn is not persuasive authority.
[7] In reaching the conclusion in Reninger that collateral estoppel barred the tortious interference claim, we observed that "[v]ery little of significance distinguished the administrative proceedings... from a formal jury trial in superior court." Reninger, 134 Wash.2d at 451, 951 P.2d 782. Both officers were represented by counsel who gave opening statements. They engaged in discovery, including depositions under oath. The officers called witnesses on their behalf and cross-examined the State's witnesses. The officers had sufficient incentive to vigorously litigate the issues in the administrative proceedings. Reninger, 134 Wash.2d at 453-54, 951 P.2d 782.
[8] For this reason, the Employment Security Department's conclusion in Christensen's case that he was not discharged for wrongful conduct has no bearing on this case. The same was true in Reninger, where this court gave no consideration to a department ruling that the two officers there were justified in resigning.
[9] By contrast, in Hadley v. Maxwell, 144 Wash.2d 306, 27 P.3d 600 (2001), the court held that collateral estoppel is generally not appropriate where all that was at stake in the earlier proceeding was a nominal fine, because the stakes were too low to provide sufficient incentive to fully litigate.
[10] It is noteworthy that the dissent does not address an important factor in this case. Mr. Christensen chose to proceed in the administrative forum, and it is undisputed that his union would not have brought his claim if he had declined.
[11] This problem of confusing issue and claim preclusion is also found in Vargas v. State, 116 Wash.App. 30, 37, 65 P.3d 330 (2003), where the court held that the Personnel Appeals Board lacked competence to address the tort of wrongful discharge in violation of public policy.
[12] For claim preclusion to apply there must be identical subject matter, cause of action, persons and parties, and the quality of the persons for or against whom the claim is made. Trautman, Claim and Issue Preclusion, 60 WASH. L.REV. at 812.
[13] The dissent says it agrees that this case does not involve claim preclusion. The dissent nonetheless concludes, under a strained analysis, that PERC's lack of authority to adjudicate wrongful discharge claims ultimately means that as a matter of public policy no administrative determination should preclude the tort from being litigated in a court. Dissent at 972. If that were true, collateral estoppel would never apply to prevent litigation of a claim of any kind where an administrative agency made the original factual determinations but lacked authority to decide the claim. Reninger and Shoemaker v. City of Bremerton, 109 Wash.2d 504, 507, 745 P.2d 858 (1987) are clearly to the contrary. More fundamentally, the dissent believes that because the wrongful discharge tort is based on public policy, collateral estoppel cannot be applied. This reasoning reflects a fundamental misunderstanding of the public policy inquiry as it concerns whether collateral estoppel should apply. The question is not whether the later cause of action has public policy aspects but is instead whether application of collateral estoppel contravenes public policy. As explained in the text, equally important causes of action, from a public policy standpoint, have been barred by application of collateral estoppel to preclude relitigation of key factual matters. E.g., Shoemaker (civil rights claim).
[1] Shoemaker v. City of Bremerton, 109 Wash.2d 504, 745 P.2d 858 (1987), is not inconsistent since the state constitutional right to a jury was inapposite to the federal court claim at issue there.
[2] That Duncan focused on the criminal defendant's right to a jury is an irrelevant distinction from the right to a jury in the civil context as the only difference lies in what is at stake; there is no functional difference between the jury's role in either case. See James L. Wright & M. Matthew Williams, Remember the Alamo: The Seventh Amendment of the United States Constitution, the Doctrine of Incorporation, and State Caps on Jury Awards, 45 S. TEX. L.REV. 449, 516 (2004).
[3] See Philip A. Trautman, Claim and Issue Preclusion in Civil Litigation in Washington, 60 WASH. L.REV. 805, 829 (1985) (noting "[i]n one sense res judicata is the more comprehensive doctrine since it bars an entire claim and not just a particular issue").