IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

JAMES SCHIBEL, an individual; and          )
PATTI SCHIBEL, an individual; and the      )          No.  32937-2-III
marital community thereof,                 )
                                           )
                 Respondents,              )
                                           )
        v.                                 )          PUBLISHED OPINION
                                           )
RICHARD EYMANN, an individual;             )
EYMANN ALLISON HUNTER JONES,               )
P.S., a Washington professional services   )
corporation; MICHAEL WITHEY, an            )
individual; LAW OFFICES OF                 )
MICHAEL WITHEY, PLLC, a                     )
Washington professional limited liability  )
company,                                    )
                                           )
                 Petitioners.              )

        KORSMO, J. — This court granted interlocutory review of an order denying

summary judgment in order to determine whether this legal malpractice action was

foreclosed by the outcome of a previous appeal upholding the withdrawal of the

petitioner attorneys in the underlying case.  We agree with the trial court that the issues

decided in the previous action were different, affirm its ruling, and remand for further

proceedings.

## FACTS

This malpractice action alleges that attorneys Richard Eymann and Michael

Withey, along with their respective law firms (collectively Attorneys), failed to protect

their clients' best interests when they withdrew on the eve of trial and were unable to

secure a continuance from the trial court. That original action had been brought by

respondents James and Patti Schibel against their former landlord, alleging breach of a

commercial lease and negligent infliction of injury due to mold exposure. The trial court

permitted the withdrawal over the objection of the Schibels. At the same hearing, the

court denied the continuance and indicated that the matter would remain set for trial.

The Schibels were represented by a different attorney when the commercial lease

action was filed in 2007. The Attorneys took over in early 2009 after the original counsel

withdrew due to a fee dispute. The Attorneys entered into a contingent fee agreement

with the Schibels. Clerk's Papers (CP) at 225-30. That agreement provided that the

Schibels controlled the decision to accept any settlement offers; the Attorneys were

authorized to front litigation costs subject to repayment by the Schibels. CP at 227-29.

When the Attorneys took over the case, the pending April 2009 trial date was

continued to April 2010. A conflict with the trial court's schedule then led to

rescheduling the trial date to August 2010. Two days before that trial, Ms. Schibel's

father passed away and the case was rescheduled to November 1, 2010. The trial judge

announced that there would be no more continuances.

2

During this period of time the Schibels and the Attorneys disagreed over whether to accept a settlement offer. The Attorneys stressed the weaknesses in the case, including inconsistent deposition testimony from Mr. Schibel and a strongly adverse view of the action by a focus group. The Attorneys also asked for an assurance that the extensive costs incurred to that point and expected for trial would be paid. They likewise did not reach an agreement on that topic. The Attorneys then wrote their clients on October 10 that they would need to withdraw in light of the breakdown of their relationship. CP at 244-47. A motion to withdraw and a motion to continue the trial date were filed the next day. Both the Schibels and the landlord objected to the withdrawal. The matter went to hearing on October 27 before the Honorable Annette Plese.

The Schibels represented themselves on the withdrawal motion. They requested to make their argument in camera, but the trial court denied the request, viewing it as improper ex parte contact. Finding compliance with CR 71, the trial court permitted the Attorneys to withdraw, noting that it was consistent with the Attorneys' ethical obligations. Judge Plese then denied the motion for a continuance. The Schibels were expected to proceed pro se on November 1 if they had not obtained counsel or settled by that time. The Schibels reached an oral agreement to dismiss the case without costs. However, they neither signed that agreement nor appeared for trial. The case was then dismissed with prejudice.

The Schibels retained counsel and appealed, challenging the withdrawal and continuance rulings. This court affirmed. *See Schibel v. Johnson*, noted at 168 Wn. App. 1046 (2012). Specifically, this court concluded that the trial judge did not abuse her discretion in granting the withdrawal. *Schibel*, slip op. at 5-10. While ethical duties define when an attorney can withdraw from a case, the trial court's discretion to permit the withdrawal is governed by case authority rather than the ethical rules. *Id.* at 6-8. We also rejected the Schibels' argument that an attorney could not withdraw if the client would be harmed by the action. *Id.* at 9. Instead, we agreed with the trial judge's findings that counsel's ethical obligations required the withdrawal. *Id.* at 9-10. We also concluded that the trial judge had not abused her discretion in denying the continuance. *Id.* at 10-12.

Represented by another new attorney, the Schibels then filed the current malpractice action against the Attorneys. Discovery ensued and eventually the Attorneys filed a motion for summary judgment, arguing that the Schibels were collaterally estopped by the previous appeal from challenging their withdrawal from the lease case.[1] The trial court, the Honorable James Triplet, disagreed with the argument in a lengthy

---

[1] The Attorneys also contended that the Schibels lacked expert testimony to support their legal malpractice claim. The Schibels responded with an affidavit from retired Judge Roger A. Bennett explaining in his view that the Attorneys did breach the standard of care in withdrawing on the eve of trial. The trial court ruled that material questions of fact existed. CP at 297. This aspect of the summary judgment ruling is not at issue in this appeal.

letter opinion. The trial court concluded that there was no Washington precedent

governing the interplay between a judicially-approved withdrawal from representation

under CR 71 and legal malpractice. It also noted that the issues resolved in the original

case were different from those in the malpractice case and that the Schibels had not had a

fair opportunity to contest the ethical problems because they could not present their

argument ex parte.

This court granted the Attorneys' motion for discretionary review. The case was

submitted to a panel without oral argument.

### ANALYSIS

The sole issue presented is whether the trial court correctly determined that

collateral estoppel did not apply to bar the malpractice action. We agree with the trial

court that the issues decided in the previous action are not the same as those presented by

this case. Although this matter comes to us as an issue of collateral estoppel, at its heart

the question here involves an attorney's duty to his client.

Several well-settled principles of law govern our review of this action. Summary

judgment is proper when the moving party bears its initial burden of establishing that it is

entitled to judgment because there are no disputed issues of material fact. *Young v. Key*

*Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). "A material fact is one that

affects the outcome of the litigation." *Owen v. Burlington N. Santa Fe R.R. Co.*, 153

Wn.2d 780, 789, 108 P.3d 1220 (2005). If that initial showing is made, then the burden

shifts to the other party to establish there is a genuine issue for the trier of fact. *Young*, 112 Wn.2d at 225-26. The responding party may not rely on speculation or having its own affidavits accepted at face value. *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986). Instead, it must put forth evidence showing the existence of a triable issue. *Id.* This court applies de novo review to an order granting summary judgment on the basis of collateral estoppel. *Barr v. Day*, 124 Wn.2d 318, 324, 879 P.2d 912 (1994).

The plaintiff in a legal malpractice action must establish four elements: (1) the existence of an attorney-client relationship that gives rise to a duty of care, (2) an act or omission by the attorney in breach of that duty, (3) damage to the client, and (4) proximate causation between the breach of duty and the damage incurred. *Hizey v. Carpenter*, 119 Wn.2d 251, 260-61, 830 P.2d 646 (1992). The standard of care is uniform throughout the state of Washington: "that degree of care, skill, diligence and knowledge commonly possessed and exercised by a reasonable, careful and prudent lawyer in the practice of law in this jurisdiction." *Cook, Flanagan & Berst v. Clausing*, 73 Wn.2d 393, 395, 438 P.2d 865 (1968).

Collateral estoppel precludes relitigation of the same issue in a subsequent action involving the parties. *Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 306, 96 P.3d 957 (2004). In order to prevail on a claim of collateral estoppel, the party seeking application of the doctrine bears the burden of showing that (1) the identical issue

6

was decided, (2) there was a final judgment on the merits, (3) the party against whom the doctrine is asserted must have been a party (or in privity with a party) to the earlier proceeding, and (4) application of collateral estoppel will not work an injustice against the estopped party. *Id.* at 307. The estopped party must have had a "full and fair opportunity to litigate the issue in the earlier proceeding." *Id.*

Also relevant to our discussion, as they were in the first appeal, are CR 71 and RPC 1.16. In general, CR 71 describes the manner in which an attorney can withdraw from representing a client, with the process varying depending on if the client objected to the withdrawal and whether counsel was appointed by the court. When a client objects to the request, "withdrawal may be obtained only by order of the court." CR 71(c)(4). Particularly relevant in both the former case and this one is the final sentence of CR 71(a): "Nothing in this rule defines the circumstances under which a withdrawal might be denied by the court."

An attorney shall not represent a client if "the representation will result in violation of the Rules of Professional Conduct or other law." RPC 1.16(a)(1). The following subsection of the rule states circumstances when permissive withdrawal is ethically allowed.

> . . . a lawyer may withdraw from representing a client if:
>
> (1) withdrawal can be accomplished without material adverse effect on the interests of the client;

(2) the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent;

(3) the client has used the lawyer's services to perpetrate a crime or fraud;

(4) the client insists upon taking action that the lawyer considers repugnant or with which the lawyer has a fundamental disagreement;

(5) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;

(6) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or

(7) other good cause for withdrawal exists.

RPC 1.16(b).

The Attorneys argue that Judge Plese necessarily decided that their withdrawal from the lease case complied with their ethical obligations, thus precluding the Schibels from maintaining a malpractice action on the same theory. The Schibels contend that the previous appeal merely resolved the issue of whether the trial court erred in permitting the Attorneys to withdraw, but did not resolve the issue of whether the attorneys ethically withdrew. Washington courts have not yet decided whether a court-sanctioned withdrawal by counsel prevents a malpractice action predicated on counsel's allegedly improper withdrawal from a case, but other states have addressed the issue.

The Attorneys rely heavily on decisions from Arkansas and Michigan. The Arkansas action involved a malpractice claim against an attorney who had been permitted

8

to withdraw from a federal case by a federal district judge. The Arkansas court understandably stated: "We are reluctant to hold that an authorized withdrawal from representing a client by a federal district judge constituted malpractice." *Bright v. Zega*, 358 Ark. 82, 186 S.W.3d 201, 205 (2004).[2] The court reasoned that it would be a "perverse state of affairs" to allow an attorney's court-authorized withdrawal to effectively act as an insurance policy for a client to settle and then sue for malpractice due to the withdrawal. *Id.* In the course of its analysis, the Arkansas court also relied on the decisions in *Washington v. Rucker*, 202 Ga. App. 888, 415 S.E.2d 919 (1992), and *Lifschultz Fast Freight, Inc. v. Haynesworth, Marion, McKay & Guerard*, 334 S.C. 244, 513 S.E.2d 96 (1999), where courts similarly had stated that court-sanctioned withdrawals serve as bars to malpractice actions. *Id.* at 205.[3]

The Schibels, in turn, rely on the decisions in *Fisher v. State*, 248 So. 2d 479 (Fla. 1971), *Allen v. Rivera*, 125 A.D.2d 278, 509 N.Y.S.2d 48 (1986), and *Greening v.*

---

[2] Respondents correctly note that *Bright* does not apply to actions for malpractice committed before withdrawal or to situations where the proper procedures for withdrawal under Rule 71 were not followed. *See Vang Lee v. Mansour*, 2008 Ark. App. 91, 289 S.W.3d 170, 174.

[3] The Attorneys also rely on *Keywell & Rosenfeld v. Bithell*, 254 Mich. App. 300, 657 N.W.2d 759, 782-90 (2002). There the Michigan Court of Appeals ruled that the trial court erred in permitting the validity of a court-sanctioned withdrawal to be reconsidered by the jury hearing an action for unpaid attorney fees.

*Klamen*, 719 S.W.2d 904 (Mo. Ct. App. 1986), as well as two Washington decisions applying related principles. The primary case is *Fisher*.

There the Florida Supreme Court outlined Florida's rule for allowing an attorney to withdraw after entering an appearance. *See Fisher*, 248 So. 2d at 484-86. In holding that a trial court should rarely withhold approval for an attorney to withdraw, the court also noted that the court's approval will not eliminate civil liability to the attorney:

> We hold that in a civil case any attorney of record has the right to terminate the attorney-client relationship and to withdraw as an attorney of record upon due notice to his client and approval by the court. Approval by the court should be rarely withheld and then only upon a determination that to grant said request would interfere with the efficient and proper functioning of the court. *The approval of the court of such withdrawal will not relieve the attorney of any civil liability for breach of duty or negligence to his client nor from appropriate disciplinary procedures for such act, if it is wrongfully done.*

*Id.* at 486 (emphasis added). Significantly, Division Two of this court adopted the *Fisher* rationale for withdrawals in *Kingdom v. Jackson*, 78 Wn. App. 154, 160, 896 P.2d 101 (1995), the same case this court relied on in deciding *Schibel v. Johnson*. In so doing, *Kingdom* quoted the entire quoted passage from *Fisher* with approval. *Id.* Because Washington has adopted Florida's rule for withdrawal, respondents argue that it is logical that Washington also should adopt Florida's rule for whether the granting of an attorney's request to withdraw relieves the attorney of liability.[4]

---

[4] The Attorneys argue that the italicized line in the *Fisher* case is mere dicta and should not be followed. While that particular line may be obiter dictum in the strictest

10

In *Kingdom*, the court noted that case law, rather than court rule, governs whether an attorney is permitted to withdraw, making it a matter left to the discretion of the trial court. *Id.* at 158. It is not necessary for a trial court to decide whether an attorney would violate the ethical rules by withdrawing; the trial court needs only to "*consider* all pertinent factors," which includes various ethical rules under RPC 1.16.[5] *Id.* at 158 (emphasis added). In fact, when "withdrawal is sought by a retained attorney in a civil case, it generally should be allowed." *Id.* at 160. In addition, the comments to the rule expressly note that because an attorney oftentimes cannot specifically state the reasons for wanting to withdraw without compromising client confidences, "[t]he lawyer's statement that professional considerations require termination of the representation ordinarily should be accepted as sufficient." RPC 1.16, cmt. 3. Effectively, an attorney who perceives an ethical problem with continued representation, communicates that fact

---

sense because it was not necessary for the court's holding, the Florida court appeared to have been anticipating a logical consequence of its holding and addressing it as part of its reasoning for the holding. Such reasoning is still persuasive. Further, Missouri has specifically adopted the *Fisher* analysis in the context of summary judgment for a legal malpractice lawsuit. *Greening*, 719 S.W.2d at 905, 907. To the extent it is dicta in *Fisher*, it is not dicta in *Greening*.

[5] At the time of *Kingdom*, this rule was listed as RPC 1.15. It was renumbered RPC 1.16 and amended effective September 1, 2006. The amendment moved current RPC 1.16(b)(1) from the prefatory section of the rule to be listed as a separate reason permitting withdrawal. *See* Rule 1.16, 157 Wn.2d 1241-44 (2006).

11

to the trial judge, and complies with the procedural requirements of CR 71, is entitled to withdraw from representation.

We agree that because Washington applies Florida's construction of CR 71, it also is appropriate to apply its understanding of the implications of that construction to attorney malpractice allegations based on counsel's withdrawal from representation. CR 71 essentially is divorced from an attorney's ethical obligations to his client. While the ethical considerations found in RPC 1.16 may inform a trial court's decision on a contested motion to withdraw, those considerations do not dictate the trial court's CR 71 ruling. As comment 3 to RPC 1.16 suggests, an attorney's statement that professional considerations require withdrawal permits a trial court to accept that rationale without determining that it is a correct statement of the factual circumstances. In other words, the court is permitted to accept counsel's assertion without actually determining that withdrawal is required by the rule.

An attorney discipline ruling provides analogous support for our position. *In re Discipline of Cohen*, 150 Wn.2d 744, 82 P.3d 224 (2004). The contested issue in that action was whether the attorney could be sanctioned for withdrawing from representation one month before a trial de novo. The attorney does not appear to have raised CR 71 as a defense to the disciplinary action, but did contend that withdrawal was mandated by his health problems. *Id.* at 755-57. Rejecting that argument, the court turned to the permissive withdrawal factors of former RPC 1.15. *Id.* at 757. Concluding that leaving

12

the client without counsel shortly before trial was a material adverse effect on the client that cost him money and denied him his day in court, the court determined that Cohen had violated former RPC 1.15(b). *Id.*

While *Cohen* did not analyze CR 71, we believe that it still informs on that application of that rule in this circumstance. When an attorney withdraws from a case, he still can be disciplined when there is an adverse effect on the client. The propriety or impropriety of withdrawal under CR 71 is a separate issue from the impact of the withdrawal on the client.

With that understanding of Washington law, we now, finally, turn to the collateral estoppel questions presented by this appeal. The trial court found that the first and fourth factors of collateral estoppel—identity of issues and injustice to a party—were not satisfied. We again agree with the trial court.

The first consideration of collateral estoppel is whether the previous action *necessarily* decided the same issue presented in the current case. *Christensen*, 152 Wn.2d at 307. As suggested by our previous discussion, the answer in this case is "no." At issue in the first case, as with most contested cases of withdrawal, was whether or not the Attorneys complied with CR 71. The court did not answer the questions of whether the Attorneys correctly perceived that ethical considerations required them to withdraw or that the Attorneys actually were motivated by that reason. Judge Plese's comments concerning the Attorneys' ethical obligations, affirmed by this court's acceptance of that

rationale in the first appeal, merely confirmed that the Attorneys properly stated their ethical concerns in conformity with comment 3 to RPC 1.16. Neither Judge Plese nor this court determined that there actually was an ethical problem with continued representation.[6]

Accordingly, the first factor of collateral estoppel is not present. While the failure to establish any of the court prongs of the collateral estoppel standard is fatal to the petitioners' argument, we briefly will discuss the fourth factor because the trial court also relied on it and the parties have argued it.

The fourth factor is whether applying collateral estoppel would work an injustice to a party. We agree that it would in this circumstance. The Schibels asked to address the court in chambers so that Mr. Johnson and his attorney would not hear the details of their disagreement with the Attorneys. When Judge Plese correctly determined that the issue could not be heard ex parte, the Schibels were left with the dilemma of either not raising the issue or having Johnson's attorney listen to the Attorneys discuss the weakness of their pending case. Under those circumstances, we cannot conclude that it would be fair to bind them to a decision where not all evidence and argument were

---

[6] While this state's construction of CR 71 would permit the argument that a contested withdrawal hearing will never *necessarily* resolve the ethical propriety of a withdrawal, we can foresee instances in which the ethical problem would properly be before the trial court and necessarily decided. This case is not one of those instances.

14

No. 32937-2-III
*Schibel v. Eymann*

presented. The trial court correctly determined that it would work an injustice to collaterally estop the Schibels despite the prior extended litigation of the CR 71 issue.

We therefore affirm Judge Triplet's decision to deny summary judgment. An attorney properly permitted to withdraw in accordance with CR 71 does not also earn an endorsement of his view of any ethical concerns that might be presented by the withdrawal. RPC 1.16.

The case is remanded for further proceedings.

_____
Korsmo, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Pennell, J.

15