

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE AUG 03 2017
Fairhurst CJ
CHIEF JUSTICE



This opinion was filed for record
at 8:00 am on Aug 3, 2017

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| JAMES SCHIBEL, an individual, and PATTI SCHIBEL, an individual; and the marital community thereof, | ) ) ) ) | No. 93214-0 |
| Respondents, | ) ) | |
| v. | ) ) ) | |
| RICHARD EYMANN, an individual; EYMANN ALLISON HUNTER JONES, PS, a Washington professional services corporation; MICHAEL WITHEY, an individual; LAW OFFICES OF MICHAEL WITHEY, PLLC, a Washington professional limited liability company, | ) ) ) ) ) ) ) ) ) | En Banc |
| Petitioners. | ) ) ) | Filed AUG 03 2017 |

MADSEN, J.—In this case, former clients are suing their attorneys for legal malpractice based, in part, on the attorneys' withdrawal from a prior case. But the attorneys obtained that withdrawal by court order. In the original case, the former clients appealed the court's order approving withdrawal, and that appeal was rejected. The attorneys thus argue that collateral estoppel applies to bar a malpractice action based on their withdrawal. We agree. We hold that the fact of withdrawal by court order in an earlier proceeding is dispositive in a later malpractice suit against the attorney. Although

other malpractice complaints unrelated to the withdrawal would not be precluded, a client cannot relitigate whether the attorney's withdrawal was proper. If we are to have rules permitting attorney withdrawal, we must allow attorneys to have confidence in those rules. We, therefore, reverse the Court of Appeals.

## FACTS

In this malpractice action, James and Patti Schibel allege that attorneys Richard Eymann and Michael Withey (Attorneys) committed legal malpractice and breached their fiduciary duties. Specifically, the Schibels claim that the Attorneys committed malpractice because they failed to timely and adequately prepare for trial, failed to properly handle settlement discussions and negotiations, and improperly withdrew from the case on the eve of trial.

The original case began in 2007 when the Schibels sued their former landlord, Leroy Johnson, for breach of a commercial lease and negligent infliction of injury due to mold exposure. When the Schibels originally filed their action, a different attorney represented them. But that attorney withdrew in 2009 due to a fee dispute with the Schibels. When the original attorney withdrew, the Attorneys took over the case and entered into a contingent fee agreement with the Schibels.

Trial for the original case was continued several times. When the Attorneys took over the case, trial was continued to April 2010. The trial court continued the case twice more before setting a trial date of November 1, 2010. At the last continuance, the judge stated that there would be no more continuances.

On October 10, 2010, the Attorneys informed the Schibels via letter that they would need to withdraw in light of the breakdown of the relationship between them and the Schibels. The next day, the Attorneys filed a motion to withdraw and a motion to continue the trial date. The Schibels objected to the motion to withdraw. The hearing on the motions was held on October 27, 2010 before Judge Annette Plese. Present at the hearing were the Schibels, the Attorneys, and counsel for Johnson. The Schibels explained that they had been unable to find replacement counsel because of the fees they still owed to the Attorneys. When Judge Plese asked the Schibels whether they would be able to find replacement counsel if she granted a continuance, they expressed that it seemed "fairly bleak" that they could in the immediate future. Clerk's Papers (CP) at 138.

Judge Plese granted the Attorneys' motion to withdraw, explaining:

[A]t this point, it appears that there is a breakdown with you and counsel, and the Court has no choice at this time other than to allow them to withdraw on your behalf. They've given the proper notice. They're here.
. . . .
. . . I am going to allow [the Attorneys] to withdraw. They've given the proper notice, and at this point, the Court can't, on a civil case, order them to stay on board and work the case, especially with their ethical obligations.

*Id.* at 139-40. Judge Plese then denied the motion for a continuance, explaining that after Johnson strenuously objected to the last continuance, she had said that there would be no further continuances. *Id.* at 140. The Schibels and Johnson then attempted settlement negotiations, but those negotiations failed. In November 2010, the Schibels' case against Johnson was dismissed with prejudice.

The Schibels retained counsel and appealed the withdrawal and continuance rulings. The Court of Appeals affirmed. *Schibel v. Johnson*, noted at 168 Wn. App. 1046, 2012 WL 2326992, at *1. The Court of Appeals concluded that the trial court had properly exercised its discretion when it granted the Attorneys' motion to withdraw. 2012 WL 2326992, at *4. The Schibels petitioned this court for review, which we denied. *Schibel v. Johnson*, 175 Wn.2d 1024, 291 P.3d 253 (2012). And the Schibels sought review in the United States Supreme Court, which was also denied. *Schibel v. Johnson*, 133 S. Ct. 2344, 185 L. Ed. 2d 165 (2013).

The Schibels then filed this malpractice action against the Attorneys. The complaint alleged that the Attorneys were negligent based on their failure to timely and adequately prepare for trial, their failure to properly handle settlement discussion and negotiations, and various actions surrounding the Attorneys' conduct in withdrawing from the case. The alleged actions surrounding withdrawal included failing to timely inform the Schibels of withdrawal, moving to withdraw too late in the case, failing to condition their withdrawal on a continuance, and failing to disclose earlier the "interests and intentions" that led the Attorneys to withdraw. CP at 4-5.

The Attorneys moved for summary judgment, arguing that complying with applicable rules and obtaining the court's permission for withdrawal precludes future actions for legal malpractice based on that withdrawal. The trial court denied the motion for summary judgment. On interlocutory appeal, the Court of Appeals affirmed. *Schibel*

*v. Eymann*, 193 Wn. App. 534, 372 P.3d 172 (2016). We accepted review and now reverse.

ANALYSIS

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 305, 96 P.3d 957 (2004); Court Rule (CR) 56(c)). We review a trial court's ruling on summary judgment de novo. *Christensen*, 152 Wn.2d at 305. We also review de novo whether collateral estoppel applies to bar relitigation of an issue. *Id.*

CR 71 governs the withdrawal of attorneys involved in civil litigation. CR 71(c) provides that an attorney may withdraw by notice in the following manner:

> (1) *Notice of Intent to Withdraw.* The attorney shall file and serve a Notice of Intent to Withdraw on all other parties in the proceeding. . . .
> (2) *Service on Client.* Prior to service on other parties, the Notice of Intent to Withdraw shall be served on the persons represented by the withdrawing attorney. . . .
> (3) *Withdrawal Without Objection.* The withdrawal shall be effective, without order of court . . . unless a written objection to the withdrawal is served by a party on the withdrawing attorney. . . .
> (4) *Effect of Objection.* If a timely written objection is served, withdrawal may be obtained only by order of the court.

In this case, the Schibels objected to the Attorneys' withdrawal, so the Attorneys could withdraw only by order of the court. CR 71(c)(4).

The Rules of Professional Conduct (RPC) also address when an attorney may withdraw. RPC 1.16(b) permits an attorney to withdraw from representation if:

> (1) withdrawal can be accomplished without material adverse effect on the interests of the client;

(2) the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent;

(3) the client has used the lawyer's services to perpetrate a crime or fraud;

(4) the client insists upon taking action that the lawyer considers repugnant or with which the lawyer has a fundamental disagreement;

(5) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;

(6) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or

(7) other good cause for withdrawal exists.

The rule is written in the disjunctive, meaning an attorney may withdraw if there is no harm to the client, the client has engaged in any of the five specific behaviors, or other good cause exists.

Collateral estoppel, also known as issue preclusion, bars relitigation of an issue in a later proceeding involving the same parties. *Christensen*, 152 Wn.2d at 306. Collateral estoppel promotes judicial economy and prevents inconvenience or harassment of parties. *Id.* (citing *Reninger v. Dep't of Corr.*, 134 Wn.2d 437, 449, 951 P.2d 782 (1998)). Importantly, collateral estoppel provides finality in adjudications, shielding parties and courts from expending resources in repetitive litigation. *Id.* at 307. Collateral estoppel precludes only those issues that were actually litigated and necessary to the final determination in the earlier proceeding. *Id.* (citing *Shoemaker v. City of Bremerton*, 109 Wn.2d 504, 507, 745 P.2d 858 (1987)). For collateral estoppel to apply, the party seeking it must show (1) the issue in the earlier proceeding is identical to the issue in the later proceeding, (2) the earlier proceeding ended with a final judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party, or in privity with a

party, to the earlier proceeding, and (4) applying collateral estoppel would not be an injustice. *Id.*

The parties have argued this case as one involving collateral estoppel. Although some courts from other states have also used collateral estoppel to address the question posed by this case, others have not. *See Bright v. Zega*, 186 S.W.3d 201, 205 (Ark. 2004) (where the propriety of withdrawal has been litigated in a prior suit, it is res judicata and cannot be relitigated in subsequent suit for legal malpractice); *Lifschultz Fast Freight, Inc. v. Haynsworth, Marion, McKay & Guérard*, 486 S.E.2d 14, 17-18 (S.C. App. 1997) (court's prior ruling allowing counsel to withdraw is the "law of the case" in subsequent case for breach of duty based on that withdrawal), *aff'd in part and overruled in part on other grounds*, 334 S.C. 244 (1999). *Cf. Allen v. Rivera*, 509 N.Y.S.2d 48, 50 (N.Y. App. Div. 1986) (collateral estoppel does not apply because it is not clear that the court approved withdrawal necessarily determined, as a matter of fact, that the attorney was not guilty of misconduct). We acknowledge there is a split among courts in the application of collateral estoppel in these cases. But taken together with the principles of judicial immunity and a respect for court orders, we agree with the courts that have applied preclusion doctrines to these types of claims.

We hold that the Schibels are collaterally estopped from relitigating whether the Attorneys' withdrawal was proper. To the extent that their malpractice claims against the Attorneys rely on the withdrawal being improper, preclusion applies and the Attorneys are entitled to summary judgment. This does not, however, preclude the malpractice

claims that the Schibels raise for the Attorney's conduct unrelated to the court sanctioned withdrawal.

The Schibels do not dispute that the second and third elements of collateral estoppel are satisfied in this case. Therefore, our inquiry focuses only on the first and fourth elements. Under CR 71(c)(4), the trial court acts as a gatekeeper for attorneys seeking to withdraw when the client objects. In this malpractice action, the Schibels have focused on the Attorneys' actions in withdrawing. But that focus is misplaced. Once the court approved the Attorneys' motion to withdraw, the withdrawal became an action of the court. With that proper focus in this case, it is clear that collateral estoppel applies to bar any malpractice claims that stem from the withdrawal.

The first element for collateral estoppel requires that the issue in the earlier proceeding is identical to the issue in the later proceeding. The Attorneys argue that the Schibels' malpractice claims are based entirely on arguments that they raised in the earlier proceeding. The Court of Appeals disagreed and found that the issues were not identical:

> At issue in the first case, as with most contested cases of withdrawal, was whether or not the Attorneys complied with CR 71. The court did not answer the questions of whether the Attorneys correctly perceived that ethical considerations required them to withdraw or that the Attorneys actually were motivated by that reason.

*Schibel*, 193 Wn. App. at 546. Characterized this way, the Court of Appeals found that the issues were not identical. This analysis, however, does not account for the fact that only the trial court could grant the motion to withdraw.

8

Through CR 71(c)(4), we have established a system by which individual attorneys cannot make the ultimate decision to withdraw. The trial court must intervene and order the withdrawal. Once the trial court approved the Attorneys' withdrawal, it sanctioned the Attorneys' actions in doing so and the withdrawal became a decision of the court, which could then be appealed. The issue of withdrawal was actually litigated in the prior case because whether the withdrawal was proper necessarily turns on whether the trial court abused its discretion in approving the withdrawal. The Court of Appeals found it had not. Thus, withdrawal was proper. Any of the Schibels' malpractice claims that rely on the fact of withdrawal present the same issue. By reframing their wrongful withdrawal argument, the Schibels are seeking to hold the Attorneys liable for a decision of the court.[1]

The fourth element of collateral estoppel, the injustice element, is rooted in procedural unfairness. "'Washington courts look to whether the parties to the earlier proceeding received a full and fair hearing on the issue in question.'" *Thompson v. Dep't*

---

[1] As an action of the court, judicial immunity would prevent a plaintiff from filing a civil suit against the judge for approving the withdrawal. Judicial immunity is rooted in public policy. The immunity is not designed to protect judges as individuals; rather, it is extended to judges to protect the interests of society. *Adkins v. Clark County*, 105 Wn.2d 675, 677, 717 P.2d 275 (1986). "If disgruntled litigants could raise civil claims against judges, then 'judges would lose "that independence without which no judiciary can either be respectable or useful."'" *Taggart v. State*, 118 Wn.2d 195, 203, 822 P.2d 243 (1992) (quoting *Butz v. Economou*, 438 U.S. 478, 509, 98 S. Ct. 2894, 57 L. Ed. 2d 895 (1978) (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347, 20 L. Ed. 646 (1872))). Preserving judicial immunity for judicial decision-making is necessary for maintaining the respect for an independent judiciary necessary in our democratic society. Further, we note that a court order can be a superseding cause that will break the causal chain necessary to establish a negligence claim. *See Bishop v. Miche*, 137 Wn.2d 518, 532, 973 P.2d 465 (1999) (finding that the judge's decision not to revoke probation broke any causal connection between any negligence and the injury).

9

*of Licensing*, 138 Wn.2d 783, 795-96, 982 P.2d 601 (1999) (quoting *In re Marriage of Murphy*, 90 Wn. App. 488, 498, 952 P.2d 624 (1998)). The Schibels argue that this element is not satisfied because although they had had an opportunity to be heard, they did not have a full and fair opportunity.

But the Schibels did have a full and fair opportunity to be heard in the prior proceeding. The Schibels were permitted to object to the Attorneys' motion to withdraw under CR 71. Judge Plese held a hearing on that motion where she heard argument from both sides. The Schibels then, with the assistance of an attorney, appealed Judge Plese's order to the Court of Appeals. That court rejected the Schibels' argument in an unpublished opinion. Then, the Schibels were able to pursue two other appeals, in our court and in the United States Supreme Court, both of which were rejected. The Schibels were afforded all opportunities to be heard consistent with our court rules. In stark comparison, courts from other states have found the injustice element not satisfied when the court approved the attorney's withdrawal without a hearing or without notice to the client. *See Allen*, 509 N.Y.S.2d at 51; *Vang Lee v. Mansour*, 289 S.W.3d 170, 174 (Ark. App. 2008). Applying collateral estoppel in this case will not be an injustice.

Sound logic supports applying collateral estoppel to these claims as well. In short, the rule and process dictated by the court rules have to mean something. When attorneys comply with the court rule for withdrawal, they should have confidence in that rule. Allowing former clients to proceed against attorneys for malpractice based solely on court sanctioned withdrawals would dissuade attorneys from following the court rules. If

10

collateral estoppel is not applied to these claims, withdrawing by court order would

expose attorneys to the same consequences as simply abandoning their clients. *See*

*Keywell & Rosenfeld v. Bithell*, 657 N.W.2d 759, 789-90 (Mich. App. 2002). We want to

encourage attorneys to follow the rules that have been put into place for their withdrawal.

This will allow the trial courts to continue to act as gatekeepers for withdrawal,

protecting the attorneys, the clients, and the system of justice.

The Arkansas Supreme Court employed this logic in a similar case. In *Bright*, a

former client attempted to sue an attorney for negligence based, in part, on allegations

that the attorney wrongfully withdrew from her case. The Arkansas Supreme Court

affirmed the trial court's dismissal of the client's claim, explaining:

> We are reluctant to hold that an authorized withdrawal from representing a
> client by a federal district judge constituted malpractice. . . . At the very
> least, [the attorney] has the right to rely upon a valid order of the federal
> district court permitting him to withdraw.
>    It would present a perverse state of affairs if a trial court could
> permit trial counsel to withdraw from representation and then that attorney
> became an "insurance policy" for the former client, after that former client
> settled for a lesser amount than what she believed she was due. . . . In our
> judgment, if [the client] believed [the attorney's] withdrawal to be wrong,
> that battle should have been waged before the federal district court and on
> appeal and not in a separate lawsuit against former counsel.
>    Accordingly, because the federal district court permitted [the
> attorney's] withdrawal, thereby sanctioning his actions in doing so, [the
> client] cannot now, in a separate lawsuit, state facts constituting legal
> malpractice . . . based on an allegation that that withdrawal was wrongful.

*Bright*, 186 S.W.3d at 205. The court in *Bright* concluded that the client had failed to

state facts on which relief could be granted. While the court relied on a different legal

principle, its rationale equally supports applying collateral estoppel.

11

Here, the Attorneys moved to withdraw, the Schibels contested that withdrawal, and the trial court ultimately authorized the withdrawal. The Schibels appealed and thus waged their battle against the withdrawal. That battle having been waged, the Schibels cannot wage it again. Collateral estoppel applies to preclude a claim of legal malpractice based on a court approved withdrawal under CR 71(c)(4).

## CONCLUSION

In the prior proceeding, the Schibels had a full and fair opportunity to actually litigate their challenge to the trial court granting the Attorneys' motion to withdraw. The fact of withdrawal by court order is dispositive in a later malpractice suit. Collateral estoppel thus precludes any malpractice claim based on that withdrawal and summary judgment on those claims is appropriate. We therefore reverse the Court of Appeals as to those claims that involve withdrawal. Because the complaint alleges malpractice claims separate from the withdrawal, such as failing to prepare for trial, those claims are not precluded.

No. 93214-0

*Madsen, J.*

WE CONCUR:

*Fairhurst, C.J.*

*Johnson, J.*

*Owens, J.*

*Stephens, J.*                    *Yu, J*

No. 93214-0

GORDON McCLOUD, J. (dissenting)—This case presents a question of first impression for this court: whether a trial court order approving an attorney's withdrawal from representation, over the client's objection, has preclusive effect barring the client's later action for attorney malpractice arising from the withdrawal. Under traditional collateral estoppel analysis, as applied to the facts in this case, the answer is clearly no. The majority departs from traditional collateral estoppel analysis and adopts a new rule barring malpractice plaintiffs from asserting that a court-sanctioned withdrawal was, in fact, improper. The majority certainly asserts policy reasons for this departure. But the policy reasons can be addressed in the context of traditional collateral estoppel analysis, without adopting a new rule that will be difficult to apply. I therefore respectfully dissent.

FACTS

*The Underlying Case*

In March 2009, James and Patti Schibel hired attorneys Richard Eymann and Michael Withey (Attorneys) to represent them in an action for fraud, negligence,

1

breach of contract, and breach of warranty against their commercial landlord, Leroy Johnson. On October 10, 2010, the Attorneys moved to withdraw from representing the Schibels. The Schibels objected to the withdrawal, in part because the trial in their action against Johnson was scheduled to begin November 1. In conjunction with their motion to withdraw, the Attorneys sought a continuance on the Schibels' behalf. But at that point, the court had already granted five continuances and had expressly advised the parties that it would not grant any more.

The record before this court contains only one document in which the Attorneys addressed the reasons they sought to withdraw: an affidavit by attorney Eymann in support of the motion to *continue*. In that affidavit, Eymann asserted (in relevant part) that "[t]he withdrawal was based upon the breakdown in communication, trust and confidence in the attorney-client relationship" and a continuation is necessary "[a]s a result of [various] events *and other issues protected by the attorney client privilege*." Clerk's Papers (CP) at 112 (emphasis added). The record contains no filing by the Attorneys connecting the withdrawal motion to any Rule of Professional Conduct (RPC) or other ethical obligation.

By contrast, the record *does* contain a filing by the Schibels addressing RPC 1.16, which governs an attorney's obligations when "Declining or Terminating Representation." In this filing, titled "Objection to Motion to Withdraw as Counsel

2

for Plaintiffs," the Schibels objected to "the unfortunate connotation of Mr. Eymann's vague statements [regarding attorney-client privilege] . . . that the Schibels have done something wrong, or proposed to do something wrong, that requires or permits withdrawal under R.P.C. 1.16." CP at 124. That declaration then goes on to deny any such wrongdoing.

On October 27, 2010, Judge Annette Plese[1] held a hearing on the motion to withdraw and the motion for a continuance. Present were the Schibels, the Attorneys, and counsel for Johnson. On the issue of withdrawal, the Schibels were reluctant to argue their opposition in front of Johnson's attorneys and asked the court to exclude them. CP at 139 ("it seems our case is pretty damaged at this point, and we're not sure that it would be appropriate to argue in front of the defense counsel"). Judge Plese denied that request. The Schibels then decided to argue three points in objection to the withdrawal motion: (1) that the Schibels had not planned or threatened to fire the Attorneys, (2) that all the alleged difficulty in the attorney-client relationship "seems to stem from us not taking the last best settlement offer that was on the table," and (3) that the only time the Schibels asked for any fee

---

[1] The relevant procedural history in this case involves both the original withdrawal proceeding and the present malpractice action. To avoid confusion, I refer to the trial court in the withdrawal proceeding as "Judge Plese" and the trial court in the present case as "the trial court."

3

waiver was after the Attorneys moved to withdraw, so that replacement counsel could "take the case . . . knowing that they would [not] have to fight for attorney's fees." CP at 142-43.

Judge Plese granted the motion to withdraw. In her oral ruling, she explained:

> [I]t appears that there is a breakdown with you and counsel, and the Court has no choice at this time other than to allow them to withdraw on your behalf.
>
> . . . .
>
> They've given the proper notice, and at this point, the Court can't, on a civil case, order them to stay on board and work the case, especially with their ethical obligations.

CP at 139-40. Judge Plese's written order also cited the Attorneys' "ethical obligations" as the basis for withdrawal: "Plaintiff's counsel gave proper notice of intent to withdraw and that the attorney-client relationship in its current status requires said withdrawal due to the ethical obligations of plaintiff's counsel." CP at 73. But Judge Plese did not state what "ethical obligations" she was referring to. Judge Plese also denied the Schibels' motion for another continuance.

The Schibels then entered into settlement negotiations with Johnson, but those negotiations broke down. In November 2010, the Schibels' case against Johnson was dismissed with prejudice.

4

*The First Appeal*

With the assistance of a new attorney, the Schibels appealed the trial court's orders denying their last motion for a continuance, granting the Attorneys' motion to withdraw, and dismissing their case with prejudice. *Schibel v. Johnson*, noted at 168 Wn. App. 1046, 2012 WL 2326992, at *1. The Court of Appeals reviewed all three orders for abuse of discretion and affirmed. 2012 WL 2326992, at *2-6. With respect to the withdrawal order, the court reasoned that "'[w]hen withdrawal is sought by a retained attorney in a civil case, it generally should be allowed'" unless "'specific articulable circumstances warrant [denial].'" *Id.* at *3 (first alteration in original) (quoting *Kingdom v. Jackson*, 78 Wn. App. 154, 160, 896 P.2d 101 (1995)). It observed that the Attorneys had complied with Civil Rule (CR) 71(c), which governs notice and other procedural requirements entailed in withdrawal, and it stated that "numerous filings" in the record supported the trial court's conclusion that "'the attorney-client relationship in its current status requires said withdrawal due to the ethical obligations of plaintiff's counsel.'" *Id.* at *3-4. But in support of that holding, the court cited only a single document, apparently: attorney Eymann's affidavit on the motion for a continuance, attesting that withdrawal was necessitated by "'the breakdown in communication, trust and confidence in the attorney-client relationship.'" *Id.* at *4. Then, citing generally "the [parties'] declarations and the

record," the court held that "the trial court's finding that good cause existed for withdrawal was not manifestly unreasonable." *Id.* at *4.

### The Malpractice Case

In January 2014, the Schibels filed an action against the Attorneys for negligence/legal malpractice and breach of fiduciary duties. The complaint alleged that the Attorneys failed to prepare adequately in the action against Johnson and then, knowing that the trial court would not grant any more continuances, "articulated fictitious reasons to justify the proposed withdrawal." CP at 3.

The Attorneys moved for summary judgment dismissal of the claims arising from their withdrawal. Of relevance here, they argued that the October 2010 hearing on their motion for withdrawal had preclusive effect because when the trial court "determined that the Defendants had an ethical obligation to withdraw," it necessarily ruled that the withdrawal did not breach any legal duty. CP at 251.

The Schibels opposed summary judgment and attached a declaration by retired Judge Roger A. Bennett. In the declaration, Judge Bennett opined that the Attorneys' withdrawal constituted conduct falling below the standard of care "under the unique circumstances of this case." CP at 197. Specifically, he stated that his review of 50 separate documents relating to the Attorneys' representation of the Schibels convinced him that the Attorneys withdrew because they feared they would

not recover sufficient fees if they went to trial. Judge Bennett opined that this violated RPC 1.2 and the Schibels' contingent fee agreement with the Attorneys, both of which vest authority to accept or reject settlement offers solely in the client. He also noted, consistent with James Schibel's declaration, that the Attorneys might have sought to withdraw because they were unprepared for trial and knew they would probably not be able to obtain another continuance. Of relevance to the collateral estoppel argument, Judge Bennett listed "several significant and material facts that were not presented to the judge who approved the withdrawal," including the amount of money the Attorneys were owed, the additional costs they expected to incur if they went to trial, and the fact that the alleged breakdown in the attorney-client relationship stemmed from the clients' refusal to settle. CP at 203. Finally, Judge Bennett cited a document—apparently before the court on the motion to withdraw but not included in the record here—titled "Plaintiffs' Counsels' Response to Schibel Plaintiffs['] Objection to Withdrawal of Counsel." CP at 203-04. Bennett's declaration quotes this document as stating:

> "Withdrawing counsel are cognizant of the need to preserve the attorney-client privileged communications and any other confidential matters. It is therefore not appropriate to describe the full context of or decision to withdraw as plaintiffs' counsel, other than to say that this highly unusual step was taken very reluctantly and after great thought and soul searching on our part."

7

CP at 204. Judge Bennett opined that Judge Plese probably interpreted this statement as implying that the Schibels intended to present false evidence or perjured testimony and that the Attorneys therefore had an ethical obligation to withdraw.

The trial court denied the motion for summary judgment. It acknowledged that Judge Plese had identified the Attorneys' "ethical obligations" as one reason to grant the withdrawal motion, but it concluded that it could not determine, on the basis of the record before it, "what those ethical obligations were found to be." CP at 295. Indeed, in the hearing on the motion, the trial court wondered whether the Attorneys should have corrected Judge Plese when, at the hearing on their withdrawal motion, she cited these "obligations" as a basis to grant:

> And I suppose if it wasn't really - - if maybe [Judge Plese] misunderstood that, maybe there was an obligation to correct that on the record with her by counsel: "Judge, we don't want to give that impression that our clients have done something wrong," because the Schibels were saying, "We haven't done anything wrong. There's no basis for it."[2]

Verbatim Report of Proceedings (VRP) (May 23, 2014), *Schibel v. Eymann*, No. 32937-2-III, at 28 (Wash. Ct. App.).

---

[2] In response to this observation, counsel for the Attorneys replied, "Sure. But . . . the issue was is this withdrawal proper, and that's what she had to determine. She determined yes. Court of Appeals said yes. And under collateral estoppel . . . it's been adjudicated. . . ." VRP (May 23, 2014), *Schibel v. Eymann*, No. 32937-2-III, at 28-29.

Ultimately, the court ruled that collateral estoppel did not apply because although "similar arguments would be used in both of the actions," the issues presented were distinct:

> The Schibels are not asserting the same claim in this suit as they asserted in the underlying action. During the underlying trial, the Schibels merely objected to the Defendant's motion to withdraw. On appeal, the issue argued was whether the trial court abused its discretion by allowing the Defendants to withdraw and by not continuing the trial date. Before this point, it has not been argued that the Defendants' withdrawal breached their fiduciary duty to the Schibels.
>
> Hence, the issue in the underlying suit was whether the trial court abused its discretion and the issue in the current suit is whether the Defendant's duty of care fell below the professional standard.

CP at 296. The court also concluded that because the issues presented were not identical, according preclusive effect to the withdrawal ruling would work an injustice.

The Court of Appeals granted discretionary review and affirmed. *Schibel v. Eymann*, 193 Wn. App. 534, 546-47, 372 P.3d 172, *review granted*, 186 Wn.2d 1009, 380 P.3d 497 (2016).

## ANALYSIS

In order to prevail on their claim of collateral estoppel, the Attorneys must show that:

> "'(1) the issue decided in the prior adjudication [is] identical with the one presented in the second; (2) the prior adjudication . . . ended in a

final judgment on the merits; (3) the party against whom the plea of collateral estoppel is asserted [was] a party or in privity with a party to the prior litigation; and (4) application of the doctrine [will] not work an injustice.'"

*In re Pers. Restraint of Moi*, 184 Wn.2d 575, 580, 360 P.3d 811 (2015) (quoting *State v. Williams*, 132 Wn.2d 248, 254, 937 P.2d 1052 (1997) (quoting *State v. Cleveland*, 58 Wn. App. 634, 639, 794 P.2d 546 (1990))), *cert. denied*, 137 S. Ct. 566, 196 L. Ed. 2d 456 (2016). The purpose of these prerequisites is to ensure that the estopped party has had a "full and fair opportunity to litigate" the issue in the earlier proceeding. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 253, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979).

Like both the trial court and the Court of Appeals in this case, I conclude that neither the first nor the fourth element of collateral estoppel is satisfied. I would therefore affirm the Court of Appeals' holding that the Schibels are not collaterally estopped to pursue a malpractice claim asserting improper withdrawal.

> I.   The First Element of Collateral Estoppel Is Not Satisfied Because the Motion To Withdraw and Malpractice Action Are Governed by Different Legal Principles

For the first element of collateral estoppel to be satisfied, the issues in the two cases must be identical in every respect. *Standlee v. Smith*, 83 Wn.2d 405, 408, 518 P.2d 721 (1974) (quoting *Neaderland v. Comm'r*, 424 F.2d 639, 642 (2d Cir. 1970)). Thus, even if two actions involve the same underlying facts, collateral estoppel does

10

not apply "'unless the matter raised in the second case involves substantially the same bundle of legal principles that contributed to the rendering of the first judgment.'" *Id.* (internal quotation marks omitted) (quoting *Neaderland*, 424 F.2d at 652). Even "a difference in the degree of the burden of proof in the two proceedings [can] preclude[] application of collateral estoppel." *Standlee*, 83 Wn.2d at 407-08 (internal quotation marks omitted) (citing *Helvering v. Mitchell*, 303 U.S. 391, 397, 58 S. Ct. 630, 82 L. Ed. 917 (1938)).

Consistent with this standard, we must compare the legal principles governing the motion to withdraw and the legal principles governing the malpractice action based on the withdrawal, in order to determine whether the first element of collateral estoppel is satisfied in this case. The majority forgoes that comparison and instead finds the first element satisfied "because whether the withdrawal was proper necessarily turns on whether the trial court abused its discretion in approving the withdrawal." Majority at 9. But this conclusory statement only begs the question presented here: whether "'the matter raised in the second case involves substantially the same bundle of legal principles that contributed to the rendering of the first judgment.'" *Standlee*, 83 Wn.2d at 408 (quoting *Neaderland*, 424 F.2d at 642). And the answer to that question is clearly no.

11

In their malpractice action, the Schibels will need to prove their case, including the fact that the Attorneys' withdrawal constituted conduct falling below the standard of care, by a preponderance of the evidence. *Ang v. Martin*, 154 Wn.2d 477, 481-82, 114 P.3d 637 (2005). By contrast, in opposing the motion to withdraw the Schibels did not address the Attorneys' duty of care at all—they just argued that *they* (the Schibels) hadn't done anything unethical. Judge Plese made no findings related to the standard of care or the Attorneys' fiduciary duties.

Nor did Judge Plese apply any burden of proof. Instead, relying solely on the parties' affidavits—and denying the Schibels' request to argue the issue in more detail outside defense counsel's presence—Judge Plese made a credibility determination: she accepted the Attorneys' contention that their relationship with the Schibels had so deteriorated that continued representation would be unethical.

When Judge Plese made that credibility determination, she was exercising discretion within the "'bundle of legal principles'" that applies to contested withdrawal motions. *Standlee*, 83 Wn.2d at 408 (internal quotation marks omitted) (quoting *Neaderland*, 424 F.2d at 642 (quoting *Comm'r v. Sunnen*, 333 U.S. 591, 602, 68 S. Ct. 715, 92 L. Ed. 898 (1948))). Among these is the rule that trial courts should err on the side of permitting withdrawal since "[t]he attorney-client relationship is consensual," and deny a motion only if "specific articulable

12

circumstances warrant that result." *Kingdom*, 78 Wn. App. at 160. As the Court of

Appeals observed, Judge Plese's ruling was consistent with Comment 3 to RPC 1.16,

which advises that "'[t]he lawyer's statement that professional considerations

require termination of the representation ordinarily should be accepted as

sufficient.'" *Schibel*, 2012 WL 2326992, at *3 (alteration in original) (quoting RPC

1.16 cmt. 3). In a malpractice action, by contrast, the trial court could not make such

a credibility determination on summary judgment. The Schibels would instead be

permitted to fully develop their theory of the case and test the Attorneys' credibility

through cross-examination.

In light of this difference, the first collateral estoppel element is not satisfied.

There is no identity of issues here because the legal principles governing the

withdrawal motion are substantially different from those that would govern a

malpractice action based on the withdrawal.

II.     The Fourth Element of Collateral Estoppel Is Not Satisfied Because the
        Withdrawal Hearing Is Not an Adequate Substitute for a Malpractice
        Trial

For similar reasons, applying collateral estoppel here would work an injustice;

thus, the fourth element is not satisfied. Even if the same basic facts are relevant to

both the withdrawal motion and the malpractice action, the Schibels were not

permitted to argue those facts in detail in the withdrawal proceeding. As explained

13

above, the Schibels attempted to argue the withdrawal motion in private, so they would not have to disclose details of their case in front of the defendant, Johnson. But the trial court denied that request and thus limited the Schibels' argument. The majority fails to acknowledge this aspect of the withdrawal hearing. Majority at 10 ("Judge Plese held a hearing on that motion where she heard argument from both sides."). The trial court also substantially deferred to the Attorneys' vague assertion that "ethical concerns" required them to withdraw.

In the context of the contested CR 71 motion, neither of these trial court actions constituted an abuse of discretion—that is why the Schibels could get no relief on appeal from the withdrawal order.[3] But neither did these trial court actions constitute a full and fair adjudication of the Attorneys' fiduciary duties. Thus, treating the withdrawal hearing as a substitute for the malpractice action works an injustice. *See In re Moi*, 184 Wn.2d at 583 ("'[O]ur case law on [the] injustice element [of collateral estoppel] is most firmly rooted in procedural unfairness [and thus] "Washington courts look to whether the parties to the earlier proceeding received a full and fair hearing on the issue in question."'" (citation omitted)

---

[3] And that is why the majority errs by concluding that the application of collateral estoppel will not work an injustice because the Schibels had the opportunity to appeal the withdrawal order. *See* majority at 10.

14

(quoting *Thompson v. Dep't of Licensing*, 138 Wn.2d 783, 795-96, 982 P.2d 601

(1999) (quoting *Marriage of Murphy*, 90 Wn. App. 488, 498, 952 P.2d 624 (1998))))).

III. The Majority Adopts a New Rule of Collateral Estoppel Specific to an Attorney's Contested Motion To Withdraw That Is Not Justified by Legitimate Policy Concerns

For the reasons given above, the trial court and the Court of Appeals were correct in this case: a straightforward application of collateral estoppel principles dictates that Judge Plese's withdrawal order should have no preclusive effect on the Schibels' subsequent malpractice action. But the majority has not engaged in a straightforward application of collateral estoppel principles. Instead, it has forgone a traditional analysis in favor of a policy holding insulating attorneys who obtain court approval to withdraw over a client's objection, even when those attorneys do so by what the former clients allege—and we are only at the allegation stage—is deception.

The majority reasons that this holding is necessary to prevent attorneys from "simply abandoning their clients." Majority at 11. In other words, the majority concludes that if a court order does not insulate attorneys from civil liability for improper withdrawal, then attorneys will have no incentive to seek such an order and will instead just abandon their clients. I am not persuaded by this reasoning.

15

CR 71 prohibits an attorney in a civil case from withdrawing, over a client's objection, without court approval. Attorneys do not follow this rule just because a violation risks liability in a subsequent malpractice action; they do so because that is what the RPCs require. Withdrawal in violation of CR 71 is sanctionable misconduct. *E.g.*, *In re Disciplinary Proceeding Against Pfefer*, 182 Wn.2d 716, 729-30, 344 P.3d 1200 (2015) (attorney subject to discipline for violating RPC 1.16(c) and (d) by withdrawing without sufficient notice). Thus, as a policy matter, I disagree that we must craft a new rule of civil immunity in order to entice attorneys into meeting their professional obligations.

Moreover, I believe the majority's new rule will prove confusing and difficult to apply in practice. In this case, for example, the Schibels allege that the Attorneys failed to prepare adequately for trial and mishandled settlement negotiations. Majority at 2. The majority holds that they may pursue *those* claims since they are "separate from the withdrawal." *Id.* at 12. But in addition to proving that the Attorneys breached their professional and fiduciary duties, the Schibels must prove causation and damages—they must prove that the Attorneys' breach caused them to lose money they would otherwise have recovered in a jury trial or settlement. Presumably, the Attorneys will defend against those allegations by arguing that any such loss had a very different cause: the Attorneys' *proper* withdrawal, necessitated

16

by their "ethical obligations." CP at 73. If the Attorneys do raise that defense, will they be able to cite Judge Plese's withdrawal order, recognizing those "ethical obligations" as evidence? Will the Schibels be allowed to refute the allegation that their unethical conduct forced the Attorneys to withdraw?

The majority's new rule does not answer these questions. It assumes a clean distinction between malpractice claims "based on the withdrawal" and malpractice claims "separate from the withdrawal," but that distinction breaks down in practice. At best, this new rule will prove confusing to apply. At worst, it will shield attorneys who have not been candid about their true reasons for withdrawing from a case. Certainly, it is not justified by the policy concerns the majority cites.

## CONCLUSION

I would apply traditional collateral estoppel analysis, as the trial court and Court of Appeals did in this case, and affirm. The majority departs significantly from that analysis and adopts a new rule of civil immunity for attorneys who withdraw allegedly on false pretenses. I see no policy justification for this rule, and I think it will be difficult to apply in practice. I therefore respectfully dissent.

Gordon McCloud, J.

González, J.

Wiggins, J.