IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| PATRICK WHITE, | ) | No. 79150-8-I |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| GRANITE FALLS, a city incorporated pursuant to chapter 35 RCW and HAROON SALEEM, in his official capacity as former Mayor of Granite Falls, | ) | UNPUBLISHED OPINION |
| Respondents. | ) | FILED: January 21, 2020 |

SMITH, J. — This appeal arises from an employment dispute between the city of Granite Falls (City) and Patrick White, who was formerly employed as a sergeant with the Granite Falls Police Department (GFPD). Following an investigation into White on eight counts of misconduct, White was demoted from sergeant to patrol officer. White's union filed a grievance based on a retaliation claim, which was denied and not appealed to the superior court. White then filed this suit in the superior court. White challenged the City's investigation and its provision of the investigation report to the Snohomish County Prosecutor's Office for a Potential Impeachment Disclosure (PID) of White. Additionally, White alleged due process violations based on his purported inability to file a claim with the Granite Falls Civil Service Commission. We conclude that White failed to set forth sufficient facts to support any of his three causes of action. Thus, we affirm the superior court's order granting summary judgment in favor of the City.

FACTS

White was employed by GFPD from 1990 until 2014, when the department closed. In April 2011, GFPD was without a chief of police for a short period of time while it waited for Interim Police Chief Dennis Taylor to be officially appointed and sworn in. White directed his subordinate to make him an official "Chief of Police" identification card with White's name and photo on it. White believed the GFPD policy manual required him to perform the role of chief. GFPD ultimately found the identification card and a chief's hat badge in White's patrol vehicle.

In July 2012, GFPD received a public records request. Chief Taylor asked White to complete the search for responsive documents. White testified that Chief Taylor told him to delete the responsive documents that White had found on his own computer. Chief Taylor testified that White said the documents were at his home and that he told White to bring them in. Chief Taylor also testified that he told White to delete three e-mail addresses that were not relevant to the public records request.

Following an unrelated incident, Chief Taylor issued a written disciplinary action for insubordination against White. Shortly thereafter, White notified the City he was taking extended sick leave under the federal Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601-2654 (FMLA). While on leave, Chief Taylor took over many of White's management duties and, in so doing, found numerous missing case reports and witness statements with no corresponding case report number. After further investigation, Chief Taylor discovered that White was responsible for approximately 48 missing case reports over a three-year period. White also had failed to clean the temporary evidence locker as directed. During his leave, White refused to return his patrol car despite Chief

2

Taylor's repeated requests. White returned from FMLA leave about one and a half months later, and Chief Taylor placed him on immediate nondisciplinary paid administrative leave to obtain a fitness-for-duty psychological evaluation. Dr. Bill Ekemo, Ph.D., a clinical and consulting psychologist, found Sergeant White fit for duty but recommended increased supervision.

On May 7, 2013, White sent a letter to Mayor Haroon Saleem claiming that Chief Taylor directed him to delete documents subject to the public records request. The City investigated the allegation using an outside investigator, Dean Mitchell. Mitchell determined that "[t]he preponderance of evidence would strongly suggest that Chief Taylor did not knowingly order a public document to be destroyed, [and did not] knowingly allow[ ] subordinates to perform illegal or improper police procedures."

The day after White sent his letter to Mayor Saleem, Chief Taylor gave White a letter indicating he would be investigated for (1) disobedience or insubordination, (2) failure or refusal to properly perform duties, (3) unsatisfactory work performance, (4) violation of GFPD's general policy of expeditious reporting, (5) criminal conduct for forgery pursuant to RCW 9A.60.020, 6) unauthorized use of an identification card, (7) unauthorized possession of GFPD property, and (8) knowingly making false or misleading statements. Stillaguamish Police Department Lieutenant Doug Pendergrass investigated the allegations. Following his investigation, Lieutenant Pendergrass sustained all eight allegations of misconduct, including finding that White "committed criminal conduct regarding the [identification card], particularly forgery under RCW 9A.60.020."

On July 17, 2013, Lieutenant Pendergrass submitted his report to Mayor Saleem.

Mayor Saleem provided White with written notice of a predisciplinary hearing and a copy of Lieutenant Pendergrass's report. Following the hearing, on August 22, 2013, Mayor Saleem issued a disciplinary decision to demote White to patrol officer and suspend him without pay for two weeks. Mayor Saleem stated that White failed to verbally address the issues pertaining to (1) the missing police reports and (2) his failure to return the police car. He also determined that White's "explanation of how and why [the identification card] came to be was muddled and did not serve to exonerate [him]."

Abiding by GFPD protocol, the City provided Snohomish County Prosecutor Mark Roe with Lieutenant Pendergrass's report. Roe determined that "it [was] plausible that Sgt. White's contention [that the items were merely a novelty] is accurate" and that the information "is unlikely to be relevant or admissible in most criminal trials." However, he determined that "a reasonable person (such as a judge or a juror), could conclude otherwise." Thus, Roe created a PID concerning White.

On August 29, 2013, White, through his union, filed a grievance with the City for discipline without just cause. The City denied his grievance during the first three steps of the grievance process.

On September 20, 2013, White also submitted a whistleblower retaliation complaint to Mayor Saleem, alleging that the City retaliated against him for filing the allegation about Chief Taylor's conduct with regard to the public records request. Mayor Saleem denied the claim, which White appealed to a state administrative law judge (ALJ). The ALJ found in favor of the City, and White did not appeal further.

On September 15, 2016, White filed this action in superior court alleging that (1) the City and Mayor Saleem negligently conducted and supervised the investigation

4

of White, (2) the City, Mayor Saleem, and Chief Taylor "negligently or with reckless indifference referred Pat White for a PID referral," and (3) Mayor Saleem and Chief Taylor "were complicit in denial of his Due Process Rights . . . by disbanding the civil service commission and by creating the witch hunt that ensued." Following discovery and depositions, the City moved for summary judgment on all of White's claims. In his response, White objected to and moved to strike exhibits 1, 3, 5 through 9, 11 through 16, 18 through 19, 21, 23 through 26, 28, and 36 through 39. White stated the exhibits were "hearsay exhibits," submitted "without personal knowledge or introduction of any evidence that the records are business records." White opposed the motion for summary judgment solely based on the inadmissibility of the City's exhibits. The trial court denied the motions to strike and granted the motion for summary judgment on all claims. The court also denied White's motion for reconsideration of its order. White appeals.

ANALYSIS

Summary Judgment

White contends that the trial court improperly granted summary judgment on each of his three causes of action. Specifically, White's argument is that "[t]he trial court erred in granting summary judgment when the record did not contain suitable admissible evidence to support it." We disagree. And we do so without inclusion of the contested exhibits.

"We review summary judgment orders de novo." Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). "[S]ummary judgment is appropriate where there is 'no genuine issue as to any material fact and . . . the moving party is entitled to a

judgment as a matter of law.'" Elcon Constr., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 164, 273 P.3d 965 (2012) (second alteration in original) (quoting CR 56(c)). Although the evidence is viewed in the light most favorable to the nonmoving party, if that party is the plaintiff and "'fails to make a showing sufficient to establish the existence of an element essential to that party's case,'" summary judgment is warranted. Young v. Key Pharms., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986)).

*Cause of Action 1*

White "allege[d] the City of Granite Falls and Haroon Saleem, acting under color of law negligently conducted the investigation of Pat White or negligently supervised the investigation of Lieutenant Pendergrass."

"In general, Washington common law does not recognize a claim for negligent investigation." Janaszak v. State, 173 Wn. App. 703, 725, 297 P.3d 723 (2013) (citing Ducote v. Dep't of Soc. & Health Servs., 167 Wn.2d 697, 702, 222 P.3d 785 (2009)). However, "[t]o the extent an employee has an employment contract requiring specific reasons for *dismissal*, then the employer must conduct an adequate investigation or be liable for breach of that contract." Lambert v. Morehouse, 68 Wn. App. 500, 505, 843 P.2d 1116 (1993) (emphasis added).

Here, the investigation did not result in White's dismissal. Instead, "[a]s a result[ of the investigation], the Mayor Saleem demoted Pat White." Thus, the employment exception to Washington's general prohibition on negligent investigation claims does not apply. As such, White did not present a cognizable claim under Washington law, and summary judgment was proper.

*Cause of Action 2*

White alleged that Mayor Saleem "did not sustain any claim regarding dishonesty" and that, therefore, the City, Mayor Saleem, and Chief Taylor acted "negligently or with reckless indifference" by submitting a PID referral.

"A negligence claim requires the plaintiff to establish (1) the existence of a duty owed, (2) breach of that duty, (3) a resulting injury, and (4) a proximate cause between the breach and the injury." Behla v. R.J. Jung, LLC, __ Wn. App. __, 453 P.3d 729, 732 (2019) (citing Tincani v. Inland Empire Zoological Soc'y, 124 Wn.2d 121, 127-28, 875 P.2d 621 (1994)), petition for review filed, No. 98035-7 (Wash. Jan. 2, 2020). "The plaintiff must supply proof for a reasonable person to, 'without speculation,' infer that the act of the other party more probably than not caused the injury." Behla, 453 P.3d at 733 (quoting Little v. Countrywood Homes, Inc., 132 Wn. App. 777, 781, 133 P.3d 944 (2006)).

White provided no evidence to raise a genuine issue of material fact as to injury and causation. The City alleged in its motion for summary judgment that "the undisputed cause of [White's] inability to obtain law enforcement work has nothing to do with the defendants." White did not provide evidence that—assuming a duty existed—the City breached its duty and that breach resulted in an injury. White provides only unsubstantiated allegations that "[a]s a result[ of the PID referral], White has been blacklisted from working for any police agency." White must make a factual showing sufficient to satisfy the essential elements of his claim or summary judgment is proper. See Young, 112 Wn.2d at 225. And White "may not rely on speculation, argumentative assertions that unresolved factual issues remain, or in having [his] affidavits considered

at face value." Seven Gables Corp. v. MGM/UA Entm't Co., 106 Wn.2d 1, 13, 721 P.2d 1 (1986). Here, White has provided no factual evidence supported by the record sufficient to establish that the PID referral prevented him from obtaining a position in law enforcement. Thus, we conclude that summary judgment was proper with regard to White's second cause of action.

### Cause of Action 3

White alleged that Mayor "Saleem[ ] . . . and Dennis Taylor, acting under color of law were complicit in the denial of his Due Process Rights[ ] . . . by disbanding the civil service commission."

In summary judgment, the "adverse party may not rest upon the mere allegations or denials of a pleading, but a response, by affidavits or as otherwise provided in this rule, must set forth *specific facts* showing that there is a genuine issue for trial." CR 56(3) (emphasis added).

Here, White did not present any specific facts showing that the commission was disbanded when he received disciplinary action. In his response to the motion for summary judgment, White only states that he was not "allowed to file a claim with the Granite Falls Civil Service Commission[,] . . . [that] Civil Service Commissioner [Robert] Littlejohn resigned as of April 2013," and that the "Commission must have three commissioners." White cites the exhibits that he objected to, which do not support his argument, and he does not provide any other evidence or support in the record for his allegations. White's declaration is more of the same. Additionally, under RCW 41.12.030, which establishes the commission, two members of the commission constitute a quorum "and the votes of any two members of such commission concurring

shall be sufficient for the decision of all matters." Thus, White did not set forth specific facts to support a determination that the commission was unable to hear his complaint at the time of his demotion, and White does not argue that there were less than two commissioners. As such, White does not show an issue of material fact existed with regard to his due process claim.

In short, and despite the additional conclusions below, we hold that summary judgment was proper on all of White's claims.

## Evidentiary Challenges

White objected to the admission of a number of exhibits and to the supplemental declaration of Jill Smith, the City's attorney. Because the court ruled on White's objections in conjunction with the City's motion for summary judgment, we review the court's rulings de novo. Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998).

### Hearsay and Business Record Exception

White claims that the trial court improperly admitted the exhibits attached to Smith's declaration in support of the City's motion for summary judgment. We agree.

Hearsay is an out-of-court statement "offered in evidence to prove the truth of the matter asserted." ER 801(c). Hearsay is inadmissible unless an exception applies. ER 802. A business record may be admissible despite being offered for the truth of the matter asserted subject to the requirements of RCW 5.45.020:

> A record of an act, condition or event, shall in so far as relevant, be competent evidence if the *custodian or other qualified witness* testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

(Emphasis added.); State v. Fleming, 155 Wn. App. 489, 499, 228 P.3d 804 (2010).
"Reviewing courts broadly interpret the statutory terms 'custodian' and 'other qualified witness.'" State v. Quincy, 122 Wn. App. 395, 399, 95 P.3d 353 (2004) (quoting State v. Ben-Neth, 34 Wn. App. 600, 603, 663 P.2d 156 (1983)).

As an initial matter, the City contends that White did not bring a motion to strike the exhibits and supplemental declaration. The City cites Jacob's Meadow Owner's Association v. Plateau 44 II LLC[1] for the proposition that "[w]hen no objection or motion to strike is made before entry of summary judgment, a party is deemed to waive any deficiency in the affidavit." In his response to the motion for summary judgment and prior to the court's order granting summary judgment, White objected to the admission of the exhibits and the supplemental declaration.[2] The City acknowledged below that White had objected to both.[3] Thus, White did not waive our review of the issue.

The City does not contest that the exhibits are hearsay. However, the City claims that the exhibits were properly admitted as business records. To be a qualified witness under RCW 5.45.020, Smith was required to testify to the identity and mode of preparation of the business record documents, and to whether the exhibits were made during the normal course of business. Neither Smith nor any other declarant made these required statements. However, in her supplemental declaration,[4] Smith makes

---

[1] 139 Wn. App. 743, 756, 162 P.3d 1153 (2007).

[2] The court's order granting summary judgment states that it considered White's "objections to certain documents."

[3] The City asserts that White "[i]s really moving for reconsideration of the Court's oral ruling, denying his unfiled Motion to Strike the City's Exhibits[ ] . . . as he did at oral argument" and that White "is challenging the timing of the Supplemental Declaration." (Emphasis omitted.)

[4] We address White's challenge to admission of the supplemental declaration

blanket statements that all 40 attached exhibits are business records. Smith does not explain the mode of preparation. Thus, the exhibits were not properly admitted as business records.

The City relies on International Ultimate Inc. v. St. Paul Fire & Marine Ins. Co.[5] to support the admission of the exhibits. There, the court dealt with the issue of documentary exhibit authentication and only briefly discussed the issue of business records. Int'l Ultimate, Inc., 122 Wn. App. at 745-46, 748. Importantly, the court did not state who testified as the records custodian as required by RCW 5.45.020. Int'l Ultimate, Inc., 122 Wn. App. at 748. Thus, International Ultimate Inc. is not persuasive.[6]

*Supplemental Declaration*

White contends that the trial court erred by admitting Smith's supplemental declaration. We disagree.

After the adverse party to a summary judgment motion files and serves opposing affidavits, "[t]he moving party may file and serve any rebuttal documents." CR 56(c). "The court may permit affidavits to be supplemented or opposed by . . . further affidavits." CR 56(e). "Until a formal order granting or denying the motion for summary judgment is entered, a party may file affidavits to assist the court in determining the existence of an issue of material fact." Cofer v. Pierce County, 8 Wn. App. 258, 261, 505 P.2d 476 (1973).

Here, the City filed Smith's supplemental declaration before the hearing for

___

below.
    [5] 122 Wn. App. 736, 87 P.3d 774 (2004).
    [6] The City's argument that the documents were authenticated because they were provided during discovery is immaterial to the issue of whether they were properly admitted as business records.

summary judgment. Thus, the trial court properly admitted the declaration.

White disagrees and mistakenly relies on White v. Kent Medical Center Inc. PS[7] for the proposition that a moving party may not raise new issues in its rebuttal materials. White is not analogous. There, the party moving for summary judgment "did not seek summary judgment on or otherwise put into issue the question of proximate cause." White, 61 Wn. App. at 169. We "h[e]ld that it was error for the court to consider the proximate cause issue . . . and to rely on that issue as a basis for granting summary judgment." White, 61 Wn. App. at 169. Here, within its supplemental declaration, the City did not raise additional issues upon which it sought summary judgment; it merely presented additional evidence. Thus, White does not control.

### ALJ's Findings of Fact and Conclusions

White contends that "[t]he trial court erred by granting preclusive effect via collateral estoppel to the ALJ." While there is no evidence that the trial court did give preclusive effect to the factual findings of the ALJ and we do not rely on the factual findings of the ALJ in reviewing the motion for summary judgment, we agree that to have done so would have been improper.

"Whether collateral estoppel applies to bar relitigation of an issue is reviewed de novo." Christensen v. Grant County Hosp. Dist. No. 1, 152 Wn.2d 299, 305, 96 P.3d 957 (2004). And "[c]ollateral estoppel may be applied to preclude only those issues that have actually been litigated and necessarily and finally determined in the earlier proceeding." Christensen, 152 Wn.2d at 307. Thus, the party seeking application of collateral estoppel must establish

---

[7] 61 Wn. App. 163, 168, 810 P.2d 4 (1991).

12

"(1) identical issues; (2) a final judgment on the merits; (3) the party against whom the plea is asserted must have been a party to or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice on the party against whom the doctrine is to be applied."

Shoemaker v. City of Bremerton, 109 Wn.2d 504, 507, 745 P.2d 858 (1987) (quoting Malland v. Dep't of Ret. Sys., 103 Wn. App. 484, 489, 694 P.2d 16 (1985)). The court must review three *additional* factors—the Dupard factors—when the prior adjudication was before an administrative body: "(1) whether the agency acted within its competence, (2) the differences between procedures in the administrative proceeding and court procedures, and (3) public policy considerations." Christensen, 152 Wn.2d at 308; Shoemaker, 109 Wn.2d at 508 (citing State v. Dupard, 93 Wn.2d 268, 275, 609 P.2d 961 (1980)).

Here, the grievances filed by White and the ALJ's final order and findings of fact resolved the issue of whether or not White was retaliated against for reporting Chief Taylor's alleged improper governmental action. However, White's complaint below did not allege retaliation as he did during the proceedings before the ALJ. Thus, the ALJ's order did not collaterally estop the litigation of White's three claims and the ALJ's factual findings do not have preclusive effect.

Even though White was not collaterally estopped from litigating his claims, as discussed above, dismissal at summary judgment was proper.

13

We affirm.

_Smith, J._

WE CONCUR:

_Andrus, J._                    _Dwyer, J._